FLETCHER HOWARD v. THE STATE.

No. 3578. Decided May 26, 1915.

Rehearing denied June 25, 1915.

**1.—Burglary—District Courts—Concurrent Jurisdiction.**

The Criminal District Courts of Dallas County, designated as No. 1 and No. 2, have concurrent jurisdiction of all criminal offenses of the grade of felony, and each court is authorized by law to transfer any cause to the other, and where the indictment for burglary was returned into Criminal District Court No. 1, and by that court transferred to Criminal District Court No. 2, where it was tried, there was no reversible error.

**2.—Same—Constitutional Law—Caption of Act.**

The Act of the Legislature creating two Criminal District Courts in Dallas County, and authorizing them to transfer felony cases from one court to the other, is constitutional, and where the caption of the Act provides for the creation of the court, and also to prescribe its jurisdiction, the same is sufficient, under section 35 of article 3, Constitution of Texas, requiring that no bill shall contain more than one subject which shall be expressed in its title. Following Johnson v. Martin, 75 Texas, 33, and other cases.

### 3.—Same—Legislative Power—Governor's Proclamation.

The Governor's proclamation submitting the question of creating a new Criminal District Court in Dallas County to the Legislature was comprehensive enough to authorize that body to create the court and define its jurisdiction.

### 4.—Same—Jury and Jury Law—Jury Wheel—Statutes Construed.

Where, upon trial of murder, the record on appeal showed that the jury drawn for the week was drawn in substantial compliance with the law by means of the jury wheel, in such cases provided, there was no reversible error. The provisions of said law are directory and not mandatory.

### 5.—Same—Continuance—Convict—Co-defendant.

Where, upon trial of murder, defendant filed a motion for continuance, alleging that his co-defendant, who had turned State's evidence, had been convicted of a felony and had never had his citizenship restored, relying on information furnished, and it appearing in the record on appeal that said witness had testified upon the trial and no question was propounded to him which would elicit the fact that he had theretofore been convicted of a felony, and a want of diligence appearing that defendant did not know that said witness had turned State's evidence, there was no error in overruling the motion.

### 6.—Same—Possession—Ownership—Variance.

Where, upon trial of burglary of a railway car, the indictment alleged ownership and possession in the railway company, the fact that the alleged stolen property was not received by the original consignee, but had been purchased by other parties to whom the railway company had delivered part of said property, but had still in its actual possession that part of the property which was alleged to have been stolen, it had in law, as far as it applied to this offense, legal possession and ownership thereof, and there was no variance between the allegation and proof.

### 7.—Same—Evidence—Opinion of Witness.

Upon trial of burglary there was no error in excluding the opinion of witnesses as to who had legal possession of the alleged stolen property, or who would sustain the loss in case of loss; this was a question of law.

### .8.—Same—Evidence—Identification—Comparison—Opinion of Witness.

Where upon trial of burglary the identification of the alleged stolen property became an issue, there was no error in admitting testimony to the effect that the witness had seen the same kind of property in the railway car from which it had been stolen, and also some of the same kind of property in possession of the officers of the law and that from an inspection of said property, both in said car and that in the hands of the officers, it was the same kind of property and this was testifying to facts which the witness observed, and not giving his opinion.

### 9.—Same—Verdict—Signature of Foreman—Abbreviation.

Where upon trial of burglary the record showed on appeal a photograph of the verdict which was signed "R. L. Houston, Form," this did not vitiate the verdict; there being no question that he was foreman of the jury.

### 10.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions showed that the court excluded the testimony at the very time it was objected to on the ground that it was not responsive to the question, there was no reversible error.

### 11.—Same—Limiting–Argument of Counsel—Discretion of Court.

Where, upon appeal from a conviction of burglary, the appellant complained that the time allotted to argument was too short to discuss the issues

of the case (the court having limited the argument to forty-five minutes to each side) but it appeared from the record that there was no abuse of judicial discretion, there was no reversible error. Following Morrison v. State, 40 Texas Crim. Rep., 473, and other cases.

#### 12.—Same—Absence of Trial Judge—Reversible Error.

Where, upon appeal from a conviction of burglary, the record showed that the trial judge, while State's counsel was making his opening address to the jury, went into an adjoining room, and was talking to the county attorney, who was not engaged in the trial of the case, and that counsel for the defendant who at this time desired to reserve an exception to the remarks of the assistant county attorney, who was addressing the jury, had to go and get the trial judge, etc., and that the latter had lost control of the actual trial of the case, the same was reversible error. Following Bateson v. State 46 Texas Crim. Rep., 34, and other cases.

#### 13.—Same—Charge of Court—Daytime Burglary.

Where the indictment was sufficient to charge a daytime burglary, and the evidence conclusively showed that if the burglary occurred it took place in the daytime, and the court correctly applied the law to the facts in his charge to the jury, there was no reversible error. Following Carr v. State, 19 Texas Crim. App., 635, and other cases.

#### 14.—Same—Charge of Court—Definition of Offense.

Where the defendant was charged with burglary by force, threats and fraud, proof that he made the entry by either of said means would authorize a conviction, and there was no error in refusing a requested charge that all means alleged of said entry must accompany the same.

#### 15.—Same—Charge of Court—Issues Raised.

Issues not raised by the evidence should never be submitted to the jury, and there was no error in the court's refusal to submit a special instruction with reference to a certain way-bill, not in evidence.

#### 16.—Same—Accomplice—Charge of Court.

Where, upon trial of burglary, the court gave a proper charge on accomplice testimony, it was not necessary to submit the requested charge on this issue.

#### 17.—Same—Amended Motion for New Trial—Practice.

Where, upon appeal from a conviction of burglary, appellant complained because the court refused to permit his counsel to read to the court his amended motion for new trial, and it appearing from the record that no new matter had been set up therein, this would present no such error as would call for a reversal; the trial court overruling the motion and thereby giving the appellant the benefit of all grounds alleged therein.

#### 18.—Same—Indictment—Words and Phrases.

Where, upon trial of burglary, the indictment in one place alleged that defendant broke and entered the car with the intent to take from said car corporeal property, instead of alleging that he broke and entered the car with the intent to take corporeal personal property, but also alleged in the same count that the defendant did take from the car corporeal personal property with the fraudulent intent to appropriate same, etc., said omission was not fatal to the indictment.

#### 19.—Same—Practice on Appeal—Ex Parte Affidavit.

The rule is that the record on appeal can not be impeached by ex parte affidavits, and it not being contended that the bill of exceptions in the record is not a correct copy of the original bill on file in the clerk's office in the lower court, or that any fraud or artifice was practiced in securing the ap-

proval of the bill, the contention that the trial judge only read a portion thereof, presents no question for review.

Appeal from Criminal District Court No. 2 of Dallas.  Tried below before the Hon. W. L. Crawford, Jr.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*McCutcheon & Church,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of constitutionality of legislative act creating Criminal District Court No. 2 of Dallas County, in connection with Governor's proclamation:  Brown v. State, 32 Texas Crim. Rep., 119; Long v. State, 58 id., 209; Baldwin v. State, 21 Texas Crim. App., 591.

On question of caption of bill:  Tadlock v. Eccles, 20 Texas, 782; Robinson v. State, 15 Texas, 311; Barnes v. Hardeman, 15 Texas, 366; Breen v. Ry. Co., 44 Texas, 302; Ham v. State, 4 Texas Crim. App., 645; Giddings v. San Antonio, 47 Texas, 548; Gunter v. Mortgage Co., 82 Texas, 496; Ex parte Mabry, 5 Texas Crim. App., 93; Fahey v. State, 27 id., 146; Fielder v. State, 40 Texas Crim. Rep., 184.

On question that Legislature has power to create one court having concurrent jurisdiction with another already existing, and to provide that cases in the old court may be transferred to the new court:  March v. State, 44 Texas, 64; Hernandez v. State, 19 Texas Crim. App., 408; Moore v. State, 36 Texas Crim. Rep., 88; Armstrong v. Emmet, 41 S. W. Rep., 87.

On question of form of indictment:  Buchanan v. State, 24 Texas Crim. App., 195; Newman v. State, 55 Texas Crim. Rep., 273.

On question of overruling motion for continuance:  Franklin v. State, 34 Texas Crim. Rep., 203; Butts v. State, 35 id., 364; Rogers v. State, 36 id., 563; Powell v. State, 49 id., 474.

On question of jury and jury law and jury wheel:  Grant v. State, 3 Texas Crim. App., 1; Woodard v. State, 9 id., 412; Ross v. State, 56 Texas Crim. Rep., 275.

On question of identification of property:  Stevens v. State, 95 S. W. Rep., 505; Woodruff v. State, 20 S. W. Rep., 573.

On question of absence of judge:  White v. State, 61 Texas Crim. Rep., 498; Scott v. State, 47 id., 568; Lewis v. State, 15 Texas Crim. App., 647.

On question of ownership:  Shelton v. State, 52 Texas Crim. Rep., 611; King v. State, 100 S. W. Rep., 387; Clark v. State, 125 S. W. Rep., 12.

On question of special charge and issues raised by the evidence:  Harris v. State, 51 Texas Crim. Rep., 564.

On question of court's charge defining burglary:  True v. State, 48 Texas Crim. Rep., 631.

On question of court's refusal to hear defendant's amended motion for new trial: Pollard v. State, 45 Texas Crim. Rep., 121.

HARPER, JUDGE.—Appellant was convicted of burglary and his punishment assessed at two years confinement in the State penitentiary.

There are two Criminal District Courts in Dallas County, No. 1, presided over by Judge Seay, and No. 2, presided over by Judge Crawford. It appears that the indictment in this case was returned into Criminal District Court No. 1, and by that court transferred to Criminal District Court No. 2, where it was tried. Several bills of exception were reserved to the authority of Criminal District Court No. 2 to try the cause. It is first claimed that the portion of the Act creating Criminal District Court No. 2, which gave authority for these two courts to transfer causes from one court to the other, is void, it being contended the caption of the Act did not recite that it gave authority to transfer causes.

Section 2 of the Act reads:· "From and after the time this law shall take effect the Criminal District Court of Dallas County, and the Criminal District Court No. 2 of Dallas County shall have and exercise concurrent jurisdiction with each other in all felony causes and in all matters and proceedings of which the said Criminal District Court of Dallas County now has jurisdiction; and either of the judges of said Criminal District Court may in their discretion transfer any cause or causes that may at any time be pending in his court to the other Criminal District Court by an order or orders entered upon the minutes of his court; and where such transfer or transfers are made the clerk of such District Court shall enter such cause or causes upon the docket to which such transfer or transfers are made, and, when so entered upon the docket, the judge shall try and dispose of said causes in the same manner as if such causes were originally instituted in said court."

This gives the two courts concurrent jurisdiction of all criminal offenses of the grade of felony, and specifically authorizes either court to transfer any cause to the other. The caption reads as applicable to this question: "An Act to create an additional Criminal District Court for the County of Dallas, and to prescribe the jurisdiction thereof; to limit and conform thereto jurisdiction of the (present) Criminal District Court of Dallas County, and to repeal all laws in conflict herewith." Section 1 of article 5 provides that "The Legislature may establish such other courts (than those named) as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the District Court and other inferior courts thereto." If under this provision of the Constitution the Legislature had authority to create Criminal District Court No. 1, it would also have authority to create Criminal District Court No. 2, for its authority is general to establish such other courts as the Legislature may deem necessary, and if the Legislature deems this court necessary, then authority to create it can not be questioned. And when the caption of the Act provides for the creation of the court and also to "prescribe its jurisdiction,"

what other or additional words were necessary to give notice to the world that in the body of the Act will be found provisions which relate to and prescribe what cases may be acted on and tried by that court. Mr. Bouvier in his Law Dictionary defines "jurisdiction" to mean "the authority by which judicial officers take cognizance of and decide causes. The right to adjudicate concerning the subject matter in any given case." Section 35 of article 3 only requires that no bill shall contain more than one subject, which shall be expressed in its title. This Act relates only to one subject, the creation of another Criminal District Court, and prescribing its jurisdiction—that is what authority and power it shall possess. As said by our Supreme Court, "Only the general or ultimate object is required to be stated in the title, and not the details by which the object is to be attained. Any provision calculated to carry the declared object into effect is admissible." Johnson v. Martin, 75 Texas, 33; Snyder v. Compton, 87 Texas, 374; Doepperschmidt v. Railway, 100 Texas, 532. And this question is discussed by this court in Ex parte Abrams, 56 Texas Crim. Rep., 465, and Joliff v. State, 53 Texas Crim. Rep., 61, and it was there held: "Suppose there be more than one subject mentioned in the Act. If they be germane or subsidiary to the main subject, or if relative directly or indirectly to the main subject, have a mutual connection and are not foreign to the main subject, the Act is not unconstitutional." The creation of the second Criminal District Court in Dallas County was deemed necessary on account of the condition of the docket of Criminal District Court No. 1, the number of cases pending, etc., and the creation of a second court would have afforded but little if any relief, if authority to transfer causes to that court had not been contained in the bill. The Act itself recites that "the great accumulation of cases upon and the crowded dockets of the Criminal District Court of Dallas County, renders necessary immediate relief by the creation of a new Criminal District Court for said county," and the object and purpose of the Act was to create another court to assist in trying causes then pending, as well as other cases as they might arise. We hold that under the provisions of the Act in question Criminal District Court No. 1 had authority to transfer this cause to District Court No. 2, and that court had authority to try said cause, and the court did not err in refusing the motion for retransfer the cause to Criminal District Court No. 1, and did not err in overruling the plea to the jurisdiction of Criminal District Court No. 2, and did not err in overruling the motion in arrest of judgment, on the grounds above stated. The Governor's submission of the question to the Legislature was comprehensive enough to authorize that body to create the court and define its jurisdiction. "The Governor specifically authorized the Legislature to create an additional Criminal District Court for Dallas County," which would necessarily carry with it the authority to define its jurisdiction.

The motion to quash the jury panel for the week was properly overruled. The recitals in the bill reserved to the action of the court in overruling the motion show that Judge Crawford, Mr. Barnes, deputy

clerk of the court, and Paul Adair, a deputy sheriff, were present when the list of jurors were drawn from the wheel. This was the main object intended to be accomplished by the jury wheel law—that the names of all the jurors should be placed in the wheel, and the list drawn from the wheel in the presence of the judge, the clerk or his deputy, and the sheriff or his deputy. This is shown to have been done, and as that was done, some slight irregularity subsequent to that time ,would not vitiate the panel, unless it was shown or attempted to be shown that some injury might or could have been done appellant by the irregularity. This is not even suggested by the bill. The bill shows it was the jury drawn for that week of the court from the wheel as prescribed by law; that the blanks were not properly filled out or certified to would be an irregularity that would not vitiate the panel of jurymen drawn for that week of the court. Such provisions of the law have been held to be directory and not mandatory. Roberts v. State, 30 Texas Crim. App., 291; Jackson v. State, 30 Texas Crim. App., 664. As stated before, the object and purpose of the law was that in counties of certain population, or containing cities of given population, the list of jurors should be placed in a wheel and drawn therefrom in the manner prescribed by law. It is not contended that this was not done in this case.

After the above motions had been overruled, appellant filed a motion for continuance, alleging that he had just learned that Dave Johnson, who was also indicted for the burglary with which appellant was charged, had turned State's evidence; that Dave Johnson had been convicted of a felony, served a term in the penitentiary, and had never had his citizenship restored. The allegations would demonstrate that appellant did not know these facts, but was simply relying on information someone furnished him, without giving the name of his informant. In his application he states that Johnson was convicted under another name, and shows he does not know the name under which he was convicted, if convicted. The application also shows that appellant was unaware of the county in which Johnson had been convicted, if ever convicted. The allegations are too vague and indefinite, and the court did not err in overruling the application. It also appears that Dave Johnson testified as a witness in the case, and no question was propounded to him which would elicit the fact that he had theretofore been convicted of a felony in any county, or under what name he was convicted, if convicted. On the issue that appellant did not know Dave Johnson had turned State's evidence, it seems to us the least diligence on his part would have ascertained that fact. On the day of his arrest, November 25, Johnson made a confession to the officers, which was reduced to writing; this was lost by the county attorney, and on January 28 he made another statement or confession. Thus it is seen that if appellant had been diligent he could have ascertained what the testimony of Dave Johnson would be—in fact, his application for a continuance shows that he did know what his testimony would be, for he says: "Your defendant says that Dave Johnson will swear that he and this defendant went to the alleged burglarized railroad car and that this defendant

opened the door to same and took from said car seven sacks of potatoes, which potatoes were taken by them to the grocery store of L. W. Gardiner, in the City of Dallas, Dallas County, Texas, in a one-horse wagon which this defendant had induced the said Dave Johnson to obtain for this purpose. That these potatoes were found in the possession of defendant at the time he was arrested. Dave Johnson will swear that defendant burglarized the said car and stole the said potatoes as alleged in the indictment, all of which is material to the State's case." This is exactly what Dave Johnson did swear on the trial, boiled down to a few words.

The appellant was charged with burglarizing a car containing potatoes. The evidence would show that the car of potatoes had been consigned to A. F. Hardie & Co., Dallas, Texas, to be disposed of for the benefit of the shipper, an Idaho firm. It appears that the original purchaser had refused to accept the car of potatoes, and the commission house of A. F. Hardie & Co. had been authorized to dispose of the car of potatoes for the Idaho firm. On November 24th A. F. Hardie carried a representative of R. B. Hardie Produce Company (J. T. Hardie) and showed him the car of potatoes. The freight had not been paid, nor bill of lading surrendered at this time, nor was the bill of lading surrendered on that day, or freight paid. The fact that A. F. Hardie was permitted to show prospective purchasers the car of potatoes would not oust possession of the railroad company. The railroad company when it accepted the car of potatoes for transportation was in possession of them, and had a qualified ownership in them until the delivery of the potatoes to the consignee or person authorized by him to receive them. It became its duty to deliver them to the real owner, and a sale of the potatoes by the real owner to a third party while in possession of the railroad company under its contract of shipment and transportation would not disturb the possession of the railroad company, and the court did not err in so holding. It appears that after A. F. Hardie had contracted to sell the potatoes to R. B. Hardie Produce Company on the 24th, on the 25th of November (some time during the day) the freight was paid by A. F. Hardie, and bill of lading surrendered, the hour the payment was made not being shown, but this would be immaterial in the light of the facts stated in the bill of exceptions. It does not so appear in the statement of facts, but in a bill of exceptions (and this governs) it is recited that prior to the time appellant and Dave Johnson broke and entered the car and took therefrom seven sacks of potatoes, Mark Murphy, a representative of R. B. Hardie Produce Company, had hauled three wagon loads of the potatoes. The question is, did the fact that a portion of the potatoes had been hauled out of the car oust the possession of the railroad company of that portion of the potatoes which had not been taken out of the car? The railroad was under obligation under its contract of shipment and transportation to make an actual delivery of the property to the consignee, or some one authorized by him to receive the property. The payment of the freight and delivery of the bill of lading to the railroad

did not transfer possession of the property to the consignee, but only gave him the right of possession, and placed the railroad company under obligation and made it its duty to make a delivery of the property. If it had refused to do so, it could have been compelled to make a delivery, but a delivery had not been made by the mere payment of the freight. M. P. Ry. Co. v. Haynes & Co., 72 Texas, 175. Under certain conditions its liability as carrier might cease, but it would have possession as warehouseman until actual delivery was made. It is a matter of common knowledge that when a consignee of a carload shipment pays the freight and delivers the bill of lading, the railroad then sends a representative to make a delivery of the goods, and to check them off as they are delivered. If the conveyance of the consignee will not haul all the carload, the car is closed until the wagons return, and then the railroad proceeds to check out the remainder of the carload. The bill of lading was a mere receipt and contract issued by the railroad to the shipper, evidencing that it has property of the shipper in its possession under contract to carry and deliver it to the consignee. When the consignee carries the bill of lading to the railroad company and pays the freight, the railroad company is then under obligation to make a delivery as it contracted to do. Was it deprived of possession of the entire carload by making a physical delivery of a portion thereof, or did it retain that character of possession of the part not delivered which would support an allegation that it was the owner under articles 858 and 862? We think so. Hutchinson on Carriers, 3d ed., sec. 666, wherein it is stated as a rule of law, that judicial notice will generally be taken of the several modes of delivery as matters of law as to usage. We have, however, in this case, the positive testimony of Mr. Sharp that he checked these potatoes as delivered. Theft is defined to be the fraudulent taking of personal property belonging to another from the possession of some person holding the same for the owner of the property. Possession is defined in this sense, as the one who exercises actual control, care and management. These words do not mean that if there is a loss of the property, as contended by appellant, that the person in possession would be legally liable for its value. Of course, if the facts showed the possessor was legally liable for its value, there could be no question that ownership might be alleged in such possessor, but that is not the only test. If A leaves property in the custody of B until he calls for it, and B uses the same care of the property as he does his own, and it is destroyed by fire, or lost without B's fault, he is not liable to A for the value of it, yet he would have that care, custody and management of the property which would authorize ownership to be alleged in him under our statutes governing theft. And while the railroad was under obligation to make a delivery of all the potatoes in the car to the consignee, we think, perhaps, as appellant contends, that if all the potatoes were in fact in the car at the time the owner paid the freight and took out a portion of them, if subsequently the car had burned, the railroad would not have been liable for the value of those

burned, if it used due care to prevent the damage—there had been a symbolic constructive delivery, such as would relieve it from liability in case of damage or loss without negligence on its part, for it might be that circumstances showed its possession was not that of a carrier but warehouseman. But the remainder of the potatoes were still in the house or car of the railroad company, and if lost or destroyed by the want of proper care, or by the negligence of the railroad company, we are inclined to think it would be liable to the owner in case of loss as warehouseman, for it knew by its being its custom to check the actual delivery of the property that the remainder, not physically delivered, was left in its car and in its possession, to be checked out when the owner came for the remainder of the potatoes, and it was such possession as that ownership might be alleged to be in it in a case of theft, and the court did not err in so holding. Hutchinson on Carriers, sec. 666. This disposes of a number of the bills of exception and renders it unnecessary to take up each one of them and discuss them separately.

The court admitted all evidence of the facts, and it was not error to exclude the opinion of witnesses as to whose possession the potatoes were in under the facts, nor whose loss it would be in case of loss. This would be a question of law on the facts, and this the court should pass on.

By another bill it is shown that T. C. Sharp was permitted to testify: "I found some potatoes at the city hall that were in posesssion of Chief Detective Tanner, at that time he had the potatoes there, seven sacks. Yes, sir, I noticed the kind of sacks they were in; I noticed the particular sacks and the potatoes at the city hall, also that was in the car. I found a comparison. You asked me how did they compare, the sacks that the potatoes were in at the city hall and the sacks that the potatoes were in at the car, how did they compare? Well, they were the same potatoes as was in the same sacks, dirty potatoes, so they contained the same kind of potatoes, the sacks were all the same; as to the kind of marks or brands that were on the sacks, well there were two sacks, one sack that I found in the car had a Los Angeles stamp on it, branded with a star, and one other at the city hall." Johnson had testified that he and appellant went to this car; that appellant opened it and handed him out seven sacks of potatoes; that by instructions of appellant he had carried the potatoes to a Mr. Gardiner and sold them to him; that appellant was near and he called to him to help unload the potatoes, and as he come over to do so the officer arrested both of them, and carried the potatoes to the city hall. The officer making the arrest corroborated Johnson as to seeing him carry the potatoes to Gardiner; the presence of appellant, the fact that Johnson called to him, and as he came to assist in unloading the potatoes he arrested them both and carried the potatoes to the city hall. Under such circumstances we think it perfectly legitimate for Mr. Sharp to testify that he had seen the potatoes in the car (in fact was the railroad official who checked out the potatoes to Hardie) and that from an inspection of the potatoes in the car, and those in the city hall, "that they were the same potatoes

and in the same kind of dirty sacks." This is all the testimony objected to on this point, and when we read the entire excerpt from his testimony copied above, it is shown he was testifying to facts he observed and not giving an opinion. Mark Murphy, the man who hauled the potatoes from the car for Hardie, also testified: "With reference to the sacks I was taking from the car, the sacks at the city hall compared with them the same, and were sewed with the same twine and branded the same. There was a sugar sack amongst them I got at the city hall just the same as the one we had at the house, they were sewed with grass twine." This testimony was also admissible. He testified both the sacks he hauled from the car and the sacks at the city hall were sewed with grass twine—the same character of twine being on both; that they were branded the same, etc. This is not an expression of an opinion but a recitation of facts coming within his observation.

The criticism that the verdict of the jury was not signed by the foreman is without merit. A photograph of the verdict is in the record and it shows to have been signed by R. L. Houston, Form—— If the word "foreman" had not been placed below the name of Mr. Houston, or an abbreviation of the word, when the verdict was signed by him, the fact that he was foreman could be shown otherwise. It is not questioned that he was foreman of the jury, and that he did not write the word "foreman" in full below his signature but in abbreviated form does not vitiate the verdict.

In another bill it is shown that Mr. Hardie while testifying stated: That said potatoes at the (city hall) were identified as the ones that came from the car. The bill shows: "Said answer was not responsive to the question asked the witness, and hence said answer could not be foreseen; that as soon as the witness did so answer, appellant requested the court to exclude said answer from the consideration of the jury." This the court did, and as the court excluded the testimony at the very time it was objected to, the bill presents no error.

It is made to appear that the court limited the argument to forty-five minutes to each side. Appellant objected to this, contending he should be granted more time. The issues were not at all complicated. The State's testimony is that appellant on the morning of November 25th went to Dave Johnson and asked him to get a wagon, that he had some potatoes he wanted him to haul; that Dave got a wagon from Z. Giddings, and Dave says he and appellant went to the car and appellant opened the car and handed the potatoes to him and he placed them in the wagon; that at appellant's instance he carried the potatoes to Gardiner to sell, appellant coming along on the opposite side of the street; that he sold the potatoes to Gardiner, and called appellant to help unload them, when they were arrested. Three witnesses were introduced who testify that appellant did come and get Dave to get the wagon. Z. Giddings, for defendant, says Dave came to get the wagon, and told him he was going to haul hay; did not say anything about potatoes; that he did not see appellant when Dave got the wagon. The officers corroborate Dave about having the potatoes at Gardiner's and

calling to appellant; they then testify that they carried the potatoes to the city hall. There was evidence then introduced as to the identity of the potatoes being the potatoes that came from the car, only two witnesses being introduced on that issue, both for the State. Appellant did not testify and called but two witnesses to the facts in the case, Giddings that Johnson told him he was going to haul hay with the wagon, and J. T. Hardie to prove that he examined the car of potatoes on the 24th and agreed to purchase them from A. F. Hardie on that day; and that the firm for whom he purchased them began to haul them on the 25th, prior to the time of the burglary, this being on the issue of whether or not the railroad company had such possession as would authorize an allegation of ownership in them. There were but ten witnesses to any facts in the case and their testimony embraces only about twenty pages of typewritten matter. As the issues were not complicated, we cannot say the court abused the discretion confided in him. We suggest that the trial court should never restrict the argument so that a fair and full presentation of the facts and deductions therefrom may not be made, and if the issues were at all complicated, or the testimony of any great length, we would feel inclined to hold the time too short. On Dave Johnson's testimony the issue was, was he worthy of belief, and if worthy of belief, was his testimony corroborated in material parts? The next is, who was in possession of the potatoes? These are all the issues made by the evidence, and it seems to us that three-quarters of an hour was ample time to discuss those issues to the jury and the evidence bearing thereon. As said in Morrison v. State, 40 Texas Crim. Rep., 473, p. 496, conduct of trial, or question of argument, is largely in the sound discretion of the trial court. Taylor v. State, 56 S. W. Rep., 753. The bill before us shows no facts which would raise the issue that the court had improperly limited the argument in this case.

The next bill complains that the judge lost control of the trial; in that the trial judge, while State's counsel was making his opening address to the jury, went into an adjoining room and was talking to the county attorney, who was not engaged in the trial of this case. It appears that counsel for the defendant desired to reserve an exception to the remarks of the assistant county attorney, who was addressing the jury, and had to go and get the judge. In Scott v. State, 47 Texas Crim. Rep., 568, this court held, mere temporary absence, although he did not hear all the proceedings, in the absence of injury shown, would not present reversible error. And in White v. State, 61 Texas Crim. Rep., 498, this court held:

"It is also insisted that it was reversible error for the judge of the court, during the argument of the case by the attorneys for appellant, to absent himself from the courtroom, and this without in any way showing that anything occurred during his absence to the detriment of the appellant. We are cited to the case of Bateson v. State, 46 Texas Crim. Rep., 34, 80 S. W. Rep., 88. In that case it was clearly shown that many things occurred during the absence of the court from the

room that were objectionable, and that if the court had been present, exception would have been made thereto at the time, but that they were prevented from making such objections because of the absence of the judge, and to have gone and hunted him up would have unduly interrupted the case, and that of itself and the calling attention thereof to the jury would have been detrimental to the appellant. What was said with reference to the absence of the judge during the trial in that case must be construed in connection with what was shown to have therein transpired. We do not understand that in that case the temporary and short absence of the judge from the courtroom when he is in easy access in an adjoining room would, without any prejudice or injury to appellant, authorize or justify a reversal on that account alone. The judge should, of course, remain in the courtroom or in such proximity and view of the jury and parties engaged in the trial that he can at all times be approached, and control the proceedings, and we can not understand why a judge should absent himself from the courtroom and permit the trial to continue. If necessity compels his retirement for any purpose, he should suspend the proceedings until his return. What we say on this point is that as no injury whatever was shown to the appellant by the judge absenting himself at this time, a reversal of this case would not be authorized on that account alone."

It is thus seen that it is held that it is improper for the trial judge to absent himself from the courtroom at any stage of the trial (and this we would emphasize), yet reversible error is not presented unless something is shown to have occurred that would injure or be calculated to injure appellant, and this appears to be the correct rule in all cases except in cases where the death penalty may be assessed. However, in this case the court in the bill certifies "he left his seat upon the bench and went from the courtroom and went into another and different room from the courtroom without the knowledge or consent of the defendant or his attorneys, and *lost control of the trial* and was removed such distance that he could not and did not hear the argument." The bill further recites that during his address to the jury the county attorney said, "I knew he would be corroborated—I had this statement I took from him just like he told it to me"; that counsel arose to except to such remarks and discovered the judge was absent; that he was compelled to go in search of the judge, and leave the county attorney "making a fervent and violent argument to the jury, which he could not hear and object to, being in search of the trial judge." As before stated, every temporary absence from the court, while to be condemned, will not be cause for reversal of the case, but when the bill shows that the judge absented himself from the courtroom, where he could not be reached by calling, and where he himself certifies he "lost control of the trial," and the bill does not show all that was said, on account of the attorney for the defendant being compelled to go in search of the judge, but on the other hand affirmatively shows that during said trial the county attorney was using "fervent and violent language," we can not say that no injury resulted. The weight of authority seems

to hold that in felony cases where the judge *loses control of the trial,* reversible error is presented. On the other hand, if only temporary absence is shown, and nothing happens during the time that could have injured the person on trial, it presents error, but not reversible error. The length of time of absence of the judge is not shown in the bill, ·only that he was in another room talking, and that he could not and did not hear what was taking place in the courtroom. Under the circumstances shown in this case, we are of the opinion, as the bill shows, the judge lost control of the trial, that appellant is entitled to a new trial.

The only exception reserved to the charge is that as the indictment simply charges burglary, without stating whether it was committed in the daytime or night, it was improper for the court to instruct the jury that if they believed beyond a reasonable doubt that appellant did in the *daytime* commit the offense, etc., they would convict. Appellant contends that as the indictment simply charged burglary, without stating whether it was in the daytime or night, the court erred in applynig the law to the facts in his charge. It is not necessary for the indict-ment in an ordinary case of burglary to charge whether it was committed in the daytime or in the night. Carr v. State, 19 Texas Crim. App., 635; Conoly v. State, 2 Texas Crim. App., 412; Simmons v. State, 9 Texas Crim. App., 396; Gonzales v. State, 12 Texas Crim. App., 657. The indictment being sufficient to charge the burglary in the daytime, and the evidence conclusively showing that, if the burglary took place, it was in the daytime, the court correctly applied .the law to the facts.

Appellant presented a special charge requesting the court to· instruct the jury, "that if appellant did enter the car, it would not be sufficient if he entered same by force or threats, or fraud, or by any two of said means, but all three of said means must accompany said entry." This is not the law—proof that he made the entry by either of said means would authorize a conviction. The statute authorizes a conviction if entry is made by either of said means.

There is no evidence that appellant had the waybill or freight bill to· this car of potatoes, consequently the court did not err in refusing to· give the special charge raising that issue. Issues not raised by the testimony should never be submitted to the jury. The court having instructed the jury that Dave Johnson was an accomplice, and that his testimony must be corroborated, in language frequently approved by this court, it was not necessary to give the special charges requested by defendant on this issue. The other special charges requested, in so far as they are the law of the case, were covered by the court's main charge.

This leaves but two questions to be disposed of: First, did the court err in refusing to permit appellant's counsel to read to him his amended motion for a new trial? We have read the very lengthy motion, and in it is assigned no matter what was not complained of during the trial of the case. It is but a repetition of the matters that were complained of in the rulings of the court during the trial, and sets forth in full

the various motions filed, to the jurisdiction of the court, the motion to retransfer the cause, the motion asking the court to hold as unconstitutional that portion of the law authorizing transfer of causes from Criminal District Court No. 1 to Criminal District Court No. 2, etc. No new matter is set up in the motion, but only those matters which had been ruled on by the trial court during the trial. If any new matter had been set up in the motion, and the court's attention called to it, we are satisfied the trial court would have heard him on that portion of the motion. We suppose when the various questions were raised during the trial, the court heard the motions read, and heard appellant on the other matters at the time they occurred, and having ruled on each and every ground set up in the motion for new trial, the fact the court refused to hear appellant read the motion would not present such error as would call for a reversal. Of course, this court necessarily must read the motion as well as the record as a whole, and if the motion points out any error, it would be our duty to reverse the case, even though the trial court had heard it read. The trial court overruled the motion and by so doing appellant was given the benefit of all grounds alleged in the motion.

Appellant's motion to quash the indictment contains one ground not hereinbefore discussed, and that is, that in a portion of the indictment it is alleged that appellant broke and entered the car with the intent to take from said car "corporeal property," instead of alleging that he broke and entered the car with intent to take "corporeal personal property." Of course, those provisions of the code under which appellant was prosecuted only punishes for the intent to take personal property and not real property, and if this was the only allegation contained in the indictment, it might be contended that the indictment did not allege whether it was personal or real property that appellant had the intent to take, but in the same count it is alleged that appellant did take from the car corporeal personal property with the intent to appropriate same to his own use and benefit, and with the intent to deprive the owner of the value thereof. Under such circumstances we do not think the omission of the word "personal" in one place where it would have been proper to insert it, when the indictment as a whole would show that appellant was charged with breaking and entering a car, with intent to steal personal property, and that he did take therefrom personal property belonging to another, with the intent to appropriate same to his own use and benefit, would be fatal to the indictment.

There are a great many bills of exception, and we have carefully read and reviewed each of them, and in our opinion no error is pointed out which would call for a reversal of this case, other than the bill which shows the judge lost control of the trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON REHEARING.

#### June 25, 1915.

HARPER, Judge.—The State has filed a motion for rehearing herein, and attaches the affidavits of Hon. W. L. Crawford, Jr., district judge; Mike T. Lively, county attorney, and A. C. Allen, assistant county attorney, all of whom swear that the trial judge did not lose control of the court, and Judge Crawford says had his attention been called to that portion of the bill so reciting he would not have approved the bill. If the bill of exception does not correctly recite the facts, it is to be regretted, but it has always been an unbroken rule of decision that the record on appeal can not be impeached by ex parte affidavits. It is not contended that the bill in the record is not a correct copy of the original bill now on file in the district clerk's office, or that any fraud or artifice was practiced in securing the approval of the bill by the trial court, only that the judge only read that portion of the bill "containing the remarks complained of" and did not read the remainder of the bill. If this bill of exception could be thus attacked, then in every case filed here on appeal, either the State or defendant could attack the record by ex parte affidavits, and this court turned into a trial court; witnesses subpoenaed from all portions of the State, and then testimony heard, in order that we might determine the correctness of the contention. This is not allowable, and this being the only ground in the motion for rehearing, it is overruled.

*Overruled.*