## J. C. Vanderhider v. The State.

### No. 7907. Delivered October 29, 1924.

### Rehearing denied January 24, 1925.

**1.—Theft—Bills of Exception—Filed Too Late—Not Considered.**

Three bills of exception appear in the record, which may not' be considered for the reason that they were filed too late. No order appears in the record extending the time for filing bills of exception, and statement of facts beyond the 30 days provided by the statute. On April 2d long after the expiration of the 30 days provided by the statute, application .was made for another 30 days extension. The court had no authority to grant this extension. We have repeatedly held that the trial court cannot extend the time for filing bills of exception, and statement of facts, after the time fixed by the statute, or given by an order of the court, has expired.

**2.—Same—Ownership—Special Owner.**

Art. 457 C. C. P. provides:
"Where one person owns the property, and another person has the possession, charge, or control of the same, the ownership thereof may be alleged to be in either." Art. 1334 of the Penal Code reads as follows: "Possession of the person so unlawfully deprived of property, is constituted by the exercise of actual control, and care, and management of the property, whether the same, be lawful or not." Following Frazier's case 18 Tex. Ct. App. 434.

Appeal from the District Court of Goliad County. Tried below before the Hon. John M. Green, Judge.

Appeal from a conviction of theft, a felony; penalty, two years in the penitentiary.

*Will T. Bagby,* for appellant.

*Tom Garrard, State's* Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, Judge.—Conviction is for theft of property over the value of fifty dollars, with punishment assessed at confinement in the penitentiary for two years.

The indictment alleges ownership of the property to have been in W. H. Stockton. The evidence shows that three bales of cotton were stolen, the real owners of which were Moore, Calhoun and Howell, respectively. Stockton was a ginner. The three parties mentioned had taken seed cotton to his gin and after it had been ginned and baled it was placed in the gin yard. This yard consisted of about two acres enclosed with a wire fence; the gate was supposed to be kept closed at night, though the evidence shows that perhaps this was not always done. The cotton in question was taken at night. The record contains much evidence relative to the handling of the cotton after it was

ginned which may be summarized as follows: Parties would deliver
seed cotton to the gin and after it had been run through the gin stands
and baled the bales of cotton would be dumped out in the gin yard.
Tickets would be delivered by Stockton to the owner of the cotton,
the tickets showing the weight and number of the bale. When the
owner desired to secure the cotton from the yard gin he was supposed
to go to Stockton or some of his employes, present the ticket and take
the cotton, or if the owner sold the cotton the ticket wuld be transferred
to the purchaser, and when the purchaser desired to secure the cotton
the ticket was supposed to be so presented by him. This rule was not
strictly followed, it being the custom of Mr. Stockton and his employes
to permit parties whom they knew to go into the gin yard and pick
out their own cotton. After the cotton was ginned Stockton would
have it moved from one place in the gin yard to another as his own
convenience requires, and to make room for other cotton as it was
ginned.

The point is made that the evidence fails to show that Stockton bore
such relation to the cotton as would characterize him as a special owner
under the statute and therefore that the evidence fails to meet the alle-
gations in the indictment in that respect. Three bills of exception
appear in the record which may not be considered for the reason that
they were filed too late. Court adjourned on the 24th day of February,
1923. No order of the court appears in the record extending the time
for filing bills of exception and statement of facts beyond the thirty days
provided by the statute. On April 2, long after the expiration of the
30 days application was made for another 30-day extension, it being
stated in the application that the court had therefore at appellant's re-
quest granted 60 days for such filing. This application was granted
and 30 days more allowed. The bills were filed within this last 30
days extension, which would be in ample time provided an order ap-
peared in the minutes of the court authorizing the first 60 days ex-
tension, but we are bound by the record and not by the recitals in the
application as to the 60 days having been allowed in the first instance.
However, if these bills should be considered we think they are not upon
a vital issue in the case except as to the complaint in the motion for a
new trial that the evidence does not support the allegations in the in-
dictment as to ownership in Stockton, and this necessarily calls for a
review upon the general question as to whether the evidence supports
the verdict. Article 457 C. C. P. provides:

"Where one person owns the property, and another person has the
possession, charge, or control of the same, the ownership thereof may be
alleged to be in either."

Article 1334 of the Penal Code reads as follows:

"Possession of the person so unlawfully deprived of property is con-
stituted by the exercise of actual control and care and management of
the property, whether the same be lawful or not."

This question of special ownership has many times been the subject of discussion and we do not feel called upon to review at any length the authorities or to extend this opinion upon the subject. Frazier's Case, 18 Texas Ct. App., 434, is the leading case, probably, upon the point. In the beginning of that opinion Judge White used this language:

"We will also see as we proceed that really ownership means nothing more than possession, and that ownership and possession are but synonymous or convertible terms in our statute on the subject of theft."

We find in the statement of facts in the present case some reference to the question of the liability of Stockton to the real owners of the cotton. We regard this as immaterial. In Torrence v. State, 85 Texas Cr. Rep., 311, 212 S. W. 957, Judge Davidson again reviews the question of special ownership and used this significant language:

"Ownership may be alleged in the special owner, whether the special owner would be responsible to the real owner or not. The proposition is, he must be under such circumstances in actual control, care and management of the property at the time it was taken. See King v. State, 43 Tex. Cr. Rep., 351, King v. State, 100 S. W. 387-389; Howard v. State, 77 Texas Crim. Rep., 185, 178 S. W. 506."

In the present case the cotton was not that character of property which required active control or management such as the care and management of some character of property demands, but it was the subject of theft and unquestionably in the "possession" of somebody, that is, in somebody's care, control and management. The tickets issued by Stockton and delivered to the owners for the bales of cotton as ginned did not thereby place the owner in possession of the cotton, but only evidenced a right of possession when presented by the holder of the ticket and this would be true although Stockton may have waived the rule and permitted parties whom he knew to take cotton whether presenting the tickets or not. The mere holding of the ticket by the owner while the cotton remained upon Stockton's gin yard no more placed the possession of the cotton in the owner than the holding of a ticket for passage on a railroad train would make the holder thereof a passenger until he had actually begun his journey which was authorized by the ticket. The cotton in question did not occupy the status of lost property which is in law deemed in possession of the owner wherever appropriated by the thief. Doolin v. State, 92 Texas Crim. Rep., 55, 241 S. W. 479. The real owner of the cotton had nothing to do with caring for it, controlling it, or managing it, after it had been ginned until he took actual possession thereof and removed it from the gin yard. The fact that Stockton moved the cotton from place to place in the gin yard to suit his own convenience in handling other cotton as it was ginned does not to our minds indicate a lack of that character of possession required to make him a special owner. It follows from what we have said that we are not in accord with ap-

pellant's contention that the elements of special ownership in Stockton were absent.

Believing the evidence supports the allegation of ownership in him, and finding no error in the record, the judgment is affirmed.

*Affirmed.*