tifies the arrest is indulged in the absence of proof or inherent defect showing the contrary. See Ex parte Nix, 85 Tex. Cr. R. 307, 212 S. W. 507; Ex parte Roselle, 87 Tex. Cr. R. 470, 222 S. W. 248; Ex parte Cheatham, 50 Tex. Cr. R. 53, 95 S. W. 1077; Ex parte Stanley, 25 Tex. App. 378, 8 S. W. 645, 8 Am. St. Rep. 440.

In the present case, the Governor's warrant is regular on its face and in accord with title 14, Tex. C. C. C. (articles 997–1008), covering the subject of fugitive from justice. The burden of proof which rests upon the appellant to overcome the presumption in favor of the accuracy of the recitals in the warrant has not been discharged. See Ex parte Bergman, 60 Tex. Cr. R. 8, 130 S. W. 174; Ex parte Jones, 82 Tex. Cr. R. 627, 199 S. W. 1110; Ex parte Haynes, 98 Tex. Cr. R. 609, 267 S. W. 490; Ex parte Ponzi, 106 Tex. Cr. R. 58, 290 S. W. 170; Ex parte Celey, 110 Tex. Cr. R. 454, 10 S.W.(2d) 94; Ex parte Yawman, 113 Tex. Cr. R. 20, 18 S.W.(2d) 647; Ex parte Southard, 104 Tex. Cr. R. 14, 282 S. W. 223.

The law contemplates that the habeas corpus hearing be before the court without a jury. Ordinarily the order of the court, after hearing the testimony, is to remand the accused to custody or discharge him. See articles 152–158, C. C. P. In such cases the ruling of the trial court upon the evidence is not ordinarily material, for the reason that on appeal, if there be evidence improperly received or rejected, the reviewing court can disregard or consider the evidence according to its merit. See Ex parte Lambert, 76 Tex. Cr. R. 50, 172 S. W. 783; Ex parte Walck, 25 Tex. App. 168, 7 S. W. 665; also Ruling Case Law, vol. 12, p. 1250, § 68.

The bills of exception have been examined, and in them nothing has been perceived which vitiates the judgment remanding the relator.

The complaint of the introduction of the so-called criminal warrant, even if improper, could not affect the result. As heretofore stated, neither it nor other evidence found in the record is such as to overturn the presumption of the authority of the Governor of Texas to issue the executive warrant under which the appellant is held. The same may be said with reference to the objection to the oral proof of a witness touching the laws of Michigan. The warrant of the Governor of Texas declares that the requisition is accompanied by complaint and warrant duly certified by the Governor as authentic, and that the accused was charged by complaint with a felony. The presumption of regularity would not be overcome by the receipt in evidence on behalf of the state of improper testimony. By the statement last made, how-

ever, it is not intended to convey the idea that the testimony was improper. The witness testified to his knowledge of the laws of Michigan. If the laws of Michigan are as he states them, then the executive warrant would support them. If the evidence is inadmissible, then the statement in the warrant that the appellant is charged by complaint is sufficient under the laws of Texas to authorize his detention.

The judgment is affirmed, and the appellant is remanded to custody.

## On Motion for Rehearing.

LATTIMORE, J.

In his motion for rehearing appellant cites no new authorities, and brings forward no new propositions. We think no need exists for restating the legal conclusions set out in the logical opinion of Presiding Judge MORROW. We call attention to the testimony of the officer of the state of Michigan as fortifying the statement in our opinion that the words "complaint" and "affidavit" are convertible terms in our practice; that a complaint under the laws and practice of the state of Michigan is an instrument in writing signed and sworn to by the complainant.

We think the case properly decided, and the motion for rehearing will be overruled.

## DE BLANC v. STATE.

No. 13991.

Court of Criminal Appeals of Texas.

April 8, 1931.

Shelton & Shelton, of Austin, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

## MORROW, P. J.

The offense is theft; penalty assessed at confinement in the penitentiary for a period of five years.

The appellant was a bank messenger. He wore a uniform identifying him as a messenger of the Texas Bank & Trust Company. The Texas Bank & Trust Company had an account at the Austin National Bank, both of which were situated in Austin, Tex., and had mutual business transactions. It was customary to transfer money from one bank to the other by the bank messenger. The appellant had acted in the capacity mentioned for a long time. On the 31st day of December, 1929, he entered the Austin National Bank and applied to the note teller for $5,000. The money was delivered to him and he signed what was termed a "debit slip," of which the following is a copy:

| Debit | | Austin, Texas, 12—31 1929 | |
| --- | --- | --- | --- |
| | | Texas Bk & Trust Co. | |
| The Austin National Bank NO—PRO 88—17 8 | | 10s | 2 000— |
| | | 5s | 3 000— |
| | | | 5 000— |
| | | H. De Blanc. | |

Touching the custom of the banks with reference to debits in connection with the matter, the following is taken from the testimony: "We did not charge that against the Texas Bank & Trust Company. The slips go through the clearing house and are handled the same as if somebody else checks on the Texas Bank & Trust Company. We would have gotten our money in clearing house settlement. We get a settlement at 11:00 o'clock every morning, the difference between their checks and ours. They would either give us a check on one of their correspondent banks, or we would give them one."

The appellant was not authorized or directed by the Texas Bank & Trust Company to get the money from the Austin National Bank, and he did not deliver the money to the Texas Bank & Trust Company.

The debit slip mentioned above was never honored. The Austin National Bank delivered the money to the appellant under the circumstances detailed above, to be delivered by him to the Texas Bank & Trust Company agreeable to the custom applicable to debit slips such as above described.

In Segal's Case, 98 Tex. Cr. R. 485, 265 S. W. 911, 35 A. L. R. 1331, it appeared that the accused purchased goods on credit. It was contended upon the trial that Segal, having at the time he bought the goods no intent to pay for them, characterized him as guilty of the offense of theft. This theory was rejected by the court upon the ground that the owner of the goods had the intention at the time of parting with both title to and possession of his goods.

In the present instance, the appellant invokes the principle mentioned and maintains that his offense is not theft for the reason that the Austin National Bank intended to part with both possession of and title to the $5,000.

Many of the cases cited and discussed in Segal's Case, supra, are illustrative of the fact that whether it was the intent of the owner to part with the possession only or possession and title is the basis of the distinction between the offense of theft and swindling. They, however, also illustrate the point that such intent is not the sole distinction. For example, the false pretext which results in the delivery of the property may embrace, not only the false representation of a past event, but a condition subsequent. Pertinent cases are the following:

In the case of Anderson v. State, 77 Tex. Cr. R. 31, 177 S. W. 85, the facts were, in substance, as follows: Sims owned two hogs. Anderson proposed to buy them. Sims consented to sell them at $7 a piece, and at that price an agreement was made with Sims to sell and Anderson to buy the hogs. Anderson

offered to pay Sims if he would deliver the hogs at the home of Anderson. Sims declined, but referred him to Kellum, and, in consideration of $1 to be paid by Anderson, Kellum removed the hogs to Anderson's home. Anderson, represented at the time of the purchase that he had the money at his home. Sims' demanded cash and said he needed the money to pay a note and would not sell on credit. When the hogs reached Anderson's home, Sims demanded his money and Anderson refused to pay it. Upon these facts Anderson was held guilty of theft by false pretext. It is to be noted that Sims parted with the possession of his hogs with the intent to vest in Anderson the title also. However, such intent was based upon Anderson's representation that he had the money at his home which would be delivered to Sims upon reaching Anderson's home. Upon this misrepresentation of fact that he had the money at his home and the assurance that it would be paid upon the delivery of the hogs, Sims permitted Anderson to take possession of the hogs, but upon the facts, including the falsity of Anderson's representation that he had the money to pay for the hogs upon their delivery and would do so, the conviction of Anderson for theft by false pretext was sustained.

In the case of Hedge v. State, 89 Tex. Cr. R. 236, 229 S. W. 862, 864, 14 A. L. R. 889, the facts were as follows: Watkins owed Hedge $636.79, and by mistake delivered to him a check for $1,061, which was $424.21 in excess of the indebtedness of Watkins to Hedge. The conviction of Hedge for the offense of theft was sustained by this court in a comprehensive opinion by Judge Lattimore, in which it was said: "If appellant received the check in question, knowing at the time that it represented a larger amount than was due him, and intended at the time of its reception to appropriate to his own use such amount as might be in excess of what was his, and did so appropriate it, his action would be theft."

The Theft Statute (article 1413, P. C. 1925) reads as follows: "The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

Article 1545, P. C. 1925, defining swindling reads thus: "'Swindling' is the acquisition of any personal or movable property, money or instrument of writing conveying or securing a valuable right, by means of some false or deceitful pretense or device, or fraudulent representation, with intent to appropriate the same to the use of the party so acquiring, or of destroying or impairing the right of the party justly entitled to the same."

Article 1549, P. C., is as follows: "Where property, money, or other articles of value enumerated in the definition of swindling, are obtained in such manner as to come within the meaning of theft or some other offense the rules herein prescribed with regard to swindling shall not be understood to take any such case out of the operation of the law which defines any such other offense."

■■ The facts in the case of Anderson v. State, supra, as well as the reason of the court in affirming the judgment, are illustrative of the point, which seems to have been overlooked in some of the decisions of this court, that, where the facts are such as would warrant a prosecution upon either swindling or theft, the indictment should be for theft. The prosecution should be for swindling only in cases in which the facts would not sustain a conviction for theft, or a conviction under some other provision of the Penal Code penalizing the fraudulent acquisition of property. In the case under discussion, the following remarks are made: "If, however, the facts in this case should be held to constitute swindling under article 1421, yet it cannot be gainsaid that the facts would authorize a jury to find that the possession of the hogs was obtained by fraudulent pretext, with the intent to deprive the owner of their value, and with the intent to appropriate the property to his own use and benefit, and under such circumstances he would also be guilty of theft by fraudulent pretext." Anderson v. State, 77 Tex. Cr. R. 31, 177 S. W. 85, 88.

The decision of this court in the case of Rundell v. State, 90 Tex. Cr. R. 410, 235 S. W. 908, seems authority for the proposition that, where the property obtained upon false pretext is money which the criminal at the time intends to steal, but which the owner parts with on the belief that the money will be used in converting it into a larger sum of money by a represented investment which the criminal had no intention of making, the offense is theft by false pretext. The opinion of this court written by Judge Lattimore, with the concurrence in the result by the other members of the court, is an interesting history of the transaction, which is summarized as follows: The appellant represented that she had a secret connection with a particular oil driller from whom she would receive inside information about wells which were drilling before they were completed, which information would enable her to double and treble the money turned over to her to be invested in such a venture. Upon such representation the appellant received from Dora Wilson a large sum of money. After the first transaction, the appellant represented to Miss Wilson that her investment had largely

increased her funds, and upon such representation acquired from Miss Wilson an additional sum of money to be dealt with in the same manner as above described, and, as an assurance to Miss Wilson against the loss of her money, the appellant executed a note in favor of Miss Wilson for the money received. The note was not paid and was never intended to be paid, so the jury found. The appellant absconded without making restitution of any of the money.

■ Announcement of the legal effect, on the appeal, which would have resulted from proof that the intent of the owner of the money was to vest title thereof in the Texas Bank & Trust Company does not seem necessary. There is no specific proof that such was the intention. The evidence may support the inference that, while the owner expected a return of its money on the following morning, it was not essential that it should receive the identical bills which were delivered to the accused. Even if it were established as a fact that in parting with the money it was not the expectation of the owner to have returned to it the identical bills delivered, but merely the equivalent of the bills, it would not, in the judgment of the writer, be fatal to the conviction. This view is supported by the cases cited above, notably Anderson v. State, 77 Tex. Cr. R. 31, 177 S. W. 85; Rundell v. State, 90 Tex. Cr. R. 410, 235 S. W. 908; Dignowitty v. State, 17 Tex. 521, 67 Am. Dec. 670; Hawkins v. State, 58 Tex. Cr. R. 408, 126 S. W. 268, 137 Am. St. Rep. 970, to which may be added Glascow v. State, 50 Tex. Cr. R. 635, 100 S. W. 933.

■ The soundness of the criticism of the indictment upon the ground that it fails to name the agent of the corporation is met, we think, by many of the decisions of this court to the effect that an indictment naming the corporation is sufficient. Among the cases so holding are Thurmond v. State, 30 Tex. App. 539, 17 S. W. 1098; White v. State, 24 Tex. App. 231, 5 S. W. 857, 5 Am. St. Rep. 879; Osborne v. State, 93 Tex. Cr. R. 54, 245 S. W. 928; Modica v. State, 94 Tex. Cr. R. 403, 251 S. W. 1049; Houghton v. State (Tex. Cr. App.) 32 S.W.(2d) 837.

There was no reason for calling upon the jury in the charge of the court to determine whether any of the other officers or employees of the bank consented to part with the money in question. The person to whom the representations were made and who delivered the money described the transaction. Some of the other officers of the bank described the workings of the institution. All of the testimony, so far as it was developed, enforces the conclusion that the appellant's false representations to the teller who delivered the money were the sole cause of its going into his possession. The case of Cantrell v. State, 105 Tex. Cr. R. 560, 289 S. W.

406, and others cited by the appellant, are not deemed relevant.

In Dignowitty v. State, 17 Tex. 521, 67 Am. Dec. 670, the accused had executed a written obligation to pay money to Francis. After Francis died, Dignowitty said to Mrs. Francis that he would like to see the contract. She produced the paper and delivered it to Dignowitty, who put it into the fire and it was burned up. The conviction for theft of the bond was sustained.

In Hawkins' Case, 58 Tex. Cr. R. 408, 126 S. W. 268, 137 Am. St. Rep. 970, the accused represented that he could buy whisky. This statement was made to Terna, who acted upon it and delivered to Hawkins a dollar which Hawkins received with the avowed purpose of buying for Terna a bottle of whisky. Hawkins appropriated the dollar to his own use and was convicted of theft. The delivery of the dollar to Hawkins was induced by his false statement that he knew of whisky for sale and would use the dollar in buying whisky for Terna. In parting with the dollar Terna did not vest the title in Hawkins, but gave it to Hawkins that he might use it for the benefit of Terna as had been represented. Terna did not expect the return of the dollar.

In Ruling Case Law, vol. 17, p. 13, upon the citation of many precedents, the following statement is made: "If a person, with a preconceived design to appropriate property to his own use, obtains possession of it by means of fraud or trickery, the taking under such circumstances amounts to larceny, because in such cases the fraud vitiates the transaction, and the owner is still deemed to retain a constructive possession of the property, and the conversion of it is a sufficient trespass, or, as is sometimes said, the fraud or trick practiced on the owner is equivalent to a trespass."

■ That in the present case the appellant acquired possession of the money by means of false pretense with the intention at the time to appropriate the money to his own use and deprive the owner of its value is manifest from the evidence and the finding of the jury. It is obvious that the owner did not intend to vest the title to the property in the appellant. There was no contract of bailment between the owner and the appellant. His representation was to the effect that he had a right to receive the money for the Texas Bank & Trust Company. His pretense that he had a right to receive the money, and his implied assurance that he would not appropriate it to his own use, are likewise false, and were fraudulently made to deceive the owner and had that effect. We find in the evidence no basis for a charge to the jury that the title to the money passed to the accused. See Modica v. State, supra.

██ The query on cross-examination of the witness Turner, the teller of the Austin National Bank who delivered the money to the appellant, whether the title to the money passed to the Texas Bank & Trust Company when delivered to the defendant, was calling for a legal conclusion, and its exclusion was not error. The ownership of the property was a question of law to be derived from the proven facts. See Howard v. State, 77 Tex. Cr. R. 185, 178 S. W. 506.

The several bills of exception, as well as the special charges requested, have been carefully examined and considered in the light of the record, also the able brief prepared by the appellant's counsel. A discussion of them in detail is pretermitted, as the remarks above made are deemed sufficient to express the views of the court on all matters presented.

The judgment is affirmed.