# JUNE, 1915.

---

HENRY ANDERSON v. THE STATE.

No. 3545.   Decided May 12, 1915.

Rehearing denied June 2, 1915.

1.—Theft of Hogs—Sufficiency of the Evidence.

Where, upon trial of theft of hogs, the evidence sustained a conviction under a proper charge of the court, there was no reversible error.

2.—Same—Swindling—Theft—Distinction Drawn.

To constitute swindling, the pretense or representation must consist of a statement of some pretended existing fact or past event made for the purpose of inducing the prosecutor to part with his property; no statement of anything to take place in future will be a pretense within the provisions of

the Code, and mere false promises of future intention are insufficient. Following Johnson v. State, 41 Texas, 65, and other cases.

### 3.—Same—Case Stated—Theft—Consent of Owner.

Where, upon trial of theft of hogs, the evidence showed that defendant got possession of them with the consent of the owner who delivered the same to defendant's agent, and who relied upon defendant's promise that he would send the money back by said agent, and the evidence showed that the taking of said hogs, though originally lawful, was obtained by a false pretext and fraudulent intent to deprive the owner of the value thereof, he was guilty of theft under article 1332, Penal Cole. Following Porter v. State, 23 Texas Crim. App., 295, and other cases.

### 4.—Same—Judicial Construction—Swindling—Theft.

See opinion for discussion of the different articles in the Penal Code on swindling and theft, drawing the distinction between the two offenses.

### 5.—Same—Statutes Construed.

Where, upon trial of theft of hogs, it appeared from the record on appeal that the prosecution might have been maintained under another article of the Penal Code yet showed also that the defendant was prosecuted and convicted for theft under the proper article of the Penal Code there was no reversible error. Following Lewis v. State, 48 Texas Crim. Rep., 309.

Appeal from the District Court of Rockwall. Tried below before the Hon. Kenneth Foree.

Appeal from a conviction of theft of hogs; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*H. M. Wade* and *A. H. Mount,* for appellant.—On question that offense is swindling, and not theft: White v. State, 11 Texas, 769; Frank v. State, 30 Texas Crim. App., 381; Price v. State, 49 Texas Crim. Rep., 131; Bink v. State, 50 id., 445; Lewis v. State, 73 Texas Crim. Rep., 16, 171 S. W. Rep., 217, and cases cited in opinion.

*C. C. McDonald,* Assistant Attorney General, for the State.—Cited cases in opinion.

HARPER, JUDGE.—Appellant was convicted of theft of hogs and his punishment assessed at two years confinement in the State penitentiary.

There is but one serious question raised for consideration, and that is, if the evidence is true, does it render appellant guilty of theft? Allen Sims testified:

"My name is Allen Sims. I live in Royse, Rockwall County, Texas. On March 5, 1915, the defendant, Henry Anderson, came to my house wanting to buy some hogs. I had two hogs for sale. I was in debt and needed the money. We went out to the lot and I showed him the hogs, and he said they were just the kind he wanted. I told him I would take $7 a piece for them, and he replied that he didn't mind paying that much for hogs like mine. We made the trade. He said he would give $7.50 if I would deliver the hogs at his home. I told him I had no way to haul the hogs over there. I told him that Lige

Kellum had a team and he said that he would go and see Kellum—that he would give Kellum $1 to haul them over. I told him I didn't know what Kellum would charge but he could go see. I went as far as the station, and he went on down to Kellum's. Anderson made the trade with Kellum to haul the hogs, agreeing to pay Kellum $1.50 to do so. Lige Kellum carried the hogs over there for him. I did not go with them when they took the hogs from my house to Anderson's. Q. 'What was the agreement about the money?' A. 'He said as soon as he got home he would pay for the hogs.' He said he had the money at home to pay for them; and his partner says, 'Yes, he has got the money right there to pay for the hogs'; and I remarked to him, 'Well, I have got a note to meet and I would be glad for you to pay for them, and if you are not going to, I would rather keep them here because I can sell them.' And he says the money is right there, and there is nothing to do but get the money and give it to this fellow as soon as he comes there. I never received any money for the hogs. Lige never gave me any money. I. then went over to Anderson's next day to see about getting the money. As soon as I got there I asked for Mr. Anderson. He was there at his house. I asked him what was the trouble. I did not get my money, and I wanted to get my money or the hogs. And he told me that he sent a fellow over on the train that morning to pay me. I told him he didn't come. He didn't get off the train. I understood the other fellow's name was McCormack; he was with him at the time he bought the hogs. McCormack seemed to be his partner. I told him that if he would let me have my hogs, I would take them, and if the money was there when I got back, I would return the hogs at my expense. He said, 'No, I won't do that; if I let you carry the hogs off, I won't have any hogs.' I told him I must have the hogs or the money; that if I did not get the hogs or the money, I would get the law. And he said, 'You nor the law either can get those hogs; I am going to give you trouble for those hogs.'

"Cross-examination: Q. 'You sold them to him for $14? A. Yes, sir. Q. Was he to pay you then? A. He was to pay me as soon as he got home. Q. You were willing for him to take the hogs away, were you? A. Yes, if he was going to give me my money. Q. You were willing for him to take the hogs away at the time he took them? A. Yes, sir.'

"I don't know whether Anderson sent the $14 to me by McCormack or not. I sold him the hogs for $14 and he has not paid me the $14."

Lige Kellum testified that appellant employed him to haul the hogs to his home, agreeing to pay $1.50 to do so. That he was to bring to Sims $14 for the hogs. That when he got to Anderson's home Anderson said he had forgotten about loaning his money out, and for him to tell Sims he would get the money and bring it over next morning. He also testified that McCormack came over next morning and did not bring any money, but said appellant (Anderson) was at home sick in bed. In this statement he is corroborated by his wife, Dora Kellum.

Clyde Yeager testified he went to Anderson's with Sims when Sims went after the hogs or the money. That appellant would not let Sims have the hogs, claiming that he had sent the money to him by McCormack.

This is all the testimony, appellant calling no witnesses, claiming that if all the testimony introduced by the State was true, he was not guilty of theft, and he so contends in this court, and while asserting he is guilty of no offense, yet if guilty of any offense he is guilty of swindling and not theft.

In the first place we will say that under the evidence appellant would not be guilty of swindling. To constitute swindling by false pretense or representation, the pretense or representation must consist of a statement of some *pretended existing fact* or past events made for the purpose of inducing the prosecutor to part with his property; no statement of *anything to take the place in future* will be a pretense within the provisions of the Code. Mere false promises or false professions of future intention are insufficient. Johnson v. State, 41 Texas, 65; Allen v. State, 16 Texas Crim. App., 150; Blum v. State, 20 Texas Crim. App., 578; Hurst v. State, 39 Texas Crim. Rep., 196; Matthews v. State, 10 Texas Crim. App., 279.

In this case the pretense relied on was that appellant represented he had the money at home and would send the $14 back by Lige Kellum. This he did not do. This was a pretense to do a thing upon the delivery of the hogs at his home—a promise to do something in the future—to send the money back by Kellum.

It is also true that the evidence would not sustain a conviction for theft under article 1329, wherein theft is defined to be "the fraudulent taking of corporeal personal property belonging to another from his possession without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking." The evidence and all the evidence shows that appellant got possession of the hogs with the consent of Sims. Sims delivered the hogs to appellant's agent, Kellum, to be carried to his, appellant's, house, relying on appellant's promise that he would send the money back by Kellum.

The only question remaining is, would the evidence show appellant guilty of theft under article 1332, which provides that "if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and to appropriate it to his own use and benefit, and the same is so appropriated, the offense will be theft."

The trial court recognized that if appellant was guilty of theft it was by virtue of this provision of the Code, and instructed the jury:

"You are instructed that the taking must be wrongful so that if the property came into the possession of the person accused of the theft by lawful means the subsequent appropriation is not theft; but if the taking so originally lawful was obtained under false pretext or with the intent to deprive the owner of the value thereof and appropriate

the property to the use and benefit of the person taking and the same is so appropriated the offense is complete.

"Hence, if you find from the evidence beyond a reasonable doubt that the defendant obtained possession of the said hogs from the said Allen Sims by a false pretext such as pretending to buy the same and with the intent on the part of the defendant to deprive the owner of the value thereof and to appropriate the hogs to his own use and benefit, and the defendant did so appropriate the same, then the offense of theft is complete; but in order to convict the defendant of the offense charged in the indictment the jury must believe beyond a reasonable doubt that the defendant had the intent at the very time he obtained the hogs, if he did obtain them from the said Allen Sims, to so deprive the owner of the value thereof and appropriate them to the use and benefit of the defendant and that he did so appropriate it. On the other hand, you are instructed that if he did not have the intent at the time that he obtained the possession of the hogs to appropriate them to his own use and benefit, or did not use a false pretext at the time to obtain said hogs, or that he did not appropriate the same to his own use and benefit, or if you have a reasonable doubt as to whether this is true, you will acquit the defendant."

This instruction is in accordance with the decisions of this court construing article 1332. Porter v. State, 23 Texas Crim. App, 295; Stokeley v. State, 24 Texas Crim. App., 509; Boyd v. State, 24 Texas Crim. App., 570; Cunningham v. State, 27 Texas Crim. App., 479; Williams v. State, 30 Texas Crim. App., 153; Givens v. State, 32 Texas Crim. Rep., 457; Hawkins v. State, 58 Texas Crim. Rep., 407; Lewis v. State, 48 Texas Crim. Rep., 309.

Our decisions in passing on theft by fraudulent pretense, theft by bailee, and swindling, have at times used some loose expressions, such as if it was intended that the title should pass the person could not be guilty of theft under any of the provisions of the Code, yet in other cases affirm the cases where the defendants had been adjudged guilty of theft where it was intended the title should pass and the title would have passed but for the fraudulent pretense in obtaining possession of the property.

In a case where it is a question of whether a person is guilty of theft by bailee or swindling, it would be correct to say that one could not be guilty of theft where it was intended that the title should pass in delivering possession of the property, for in that character of case there could be no question of bailment where it was intended the title should pass, for in that instance he would not be bailee but owner, and, therefore, could not be guilty of theft by conversion as bailee, and if guilty of any offense, it would necessarily be swindling, and in nearly all the cases where it is said that the question of whether or not it was intended that the title should pass is the dividing line between theft and swindling, is in that character of case. And in a case where the title would in law pass, unless defeated by the fraudulent representation, it would necessarily also be swindling, if any offense. But where the possession

is obtained under such circumstances, the title did not pass by reason of the fraud practiced, as in this case.

But this case aptly illustrates a case where but for the fraudulent representation the title to the hogs would have passed, yet the appellant would not be guilty of swindling, because the fraudulent representation relied on was as to something thereafter to occur. And also aptly illustrates a case where a person obtains possession of property by fraudulent pretext, and under circumstances where the title would pass but for the fraud practiced, and is in our opinion the very character of case which article 1332 was intended to reach and punish. The owner of the hogs tells the prospective purchaser he will sell the hogs for $14, but he must have the money, as he had a note to meet. That if the purchaser could not pay the cash he would keep the hogs, for he could sell them for cash to someone else. Appellant replies he has the money at home, and will send it right back by Kellum. His companion vouches for the statements, and while it may be true he had the money at home, yet under the facts and circumstances it was never his intention to send the money back by Kellum, and although it may be said that the possession of the hogs was obtained by Anderson with the consent of the owner, yet the evidence would authorize the jury to find that appellant intended at the time he obtained possession to fraudulently appropriate them to his own use, and did so appropriate them. There is no question of a sale on credit to Anderson. Sims positively said he would not do so.

If, however, the facts in this case should be held to constitute swindling under article 1421, yet it can not be gainsaid that the facts would authorize a jury to find that the possession of the hogs was obtained by fraudulent pretext, with the intent to deprive the owner of their value, and with the intent to appropriate the property to his own use and benefit, and under such circumstances he would also be guilty of theft by fraudulent pretext, and article 1425 of the Code provides: "Where property, money or other articles of value enumerated in the definition of swindling, are obtained in such manner as to come within the meaning of theft as defined by the Code, the rules herein prescribed shall not be understood to take any such case out of the operation of the law which defines such other offense." As this court held in Lewis v. State, 48 Texas Crim. Rep., 309, in an opinion by Judge Henderson: "The fact that this prosecution might have been maintained under one article of the Code, does not establish that the prosecution could not also be maintained under the article of the Code under which he was prosecuted, if the facts bring it within the latter article."

The other questions in the record present no error, and we are of the opinion the judgment should be affirmed.

_Affirmed._

[Rehearing denied June 2, 1915.—Reporter.]