### F. V. WHITE v. THE STATE.

No. 15537. Delivered February 22, 1933.
Rehearing Withdrawn March 22, 1933.
Reported in 58 S. W. (2d) 530.

The opinion states the case.

*C. Stanley Banks, W. B. Carssow, Forrest Campbell,* and *Douglas & Black,* all of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft by false pretext; the punishment, confinement in the penitentiary for six years.

The conviction is under an ordinary indictment for theft, it being charged that appellant fraudulently took from the possession of Mrs. M. A. Biglay five hundred dollars in money.

The testimony of the state was, in substance, as follows: Appellant was engaged in the real estate business in San Antonio, having an office in the Gunter building. C. A. Simpson was employed in the Gunter building as elevator operator. His salary was $75 a month. Appellant approached Simpson and told him that he had a chance to buy some lots, but could not take title to the property because of a judgment pending against him. He asked Simpson if he would take title to the property, saying that it was good clear property, and that if the lots were sold Simpson would receive half of the proceeds of the sale. He stated to Simpson that the property would sell for six hundred dollars a lot. He said he was going to trade for the lots, putting in his automobile as part payment. Further he told Simpson that it would not obligate him in any way if he took title to the property. On June 25, 1929, appellant had Simpson to execute a note for five hundred dollars and a deed of trust on two lots to secure the payment of the note. The note was made payable to Mrs. M. A. Biglay, the injured

party. Simpson testified that he did not know when he signed the note that he was promising to pay Mrs. Biglay five hundred dollars, nor that he was executing a deed of trust to secure her in the payment of that amount. He said he signed the instruments, but appellant did not take his acknowledgment to the deed of trust. The deed of trust showed that Simpson acknowledged it before appellant as notary public. Simpson testified that he at no time received five hundred dollars for the execution of the note. Appellant secured from one Mills, who resided in Philadelphia, a quitclaim deed to the two lots described in the deed of trust, paying Mills therefor $25.00. Mills operated a syndicate engaged in buying up tax titles, and the two lots in question had been bought at tax sales. Simpson was named as grantee in the quitclaim deed. At the time appellant paid $25.00 for the quitclaim deed there were unpaid city taxes on the lots for a period of thirty years, aggregating approximately one hundred dollars. The testimony of the state was to the effect that the lots were not reasonably worth over fifty or sixty dollars, and that they were practically without value when the unpaid taxes were considered. Prior to the time appellant secured the quitclaim deed in the name of Simpson, appellant went to Mrs. Biglay, a widow 70 years of age, and stated to her that he had a party who desired a loan on two vacant lots, worth $400.00 each. Mrs. Biglay stated to appellant that she did not like to loan money on vacant lots. Appellant stated that the party desiring the loan was a good man; that he had known him for a long time; that he had made several loans to him; that he had always been prompt in repaying the money. Upon appellant's representation that the loan would be paid in a year, and that he would secure a note and deed of trust on the lots from the owner, Mrs. Biglay delivered to appellant her check for $500.00 payable to appellant. Appellant promised to have the note and deed of trust executed and delivered to Mrs. Biglay. Two or three days after delivering the check to appellant Mrs. Biglay went to Colorado and remained there until sometime in October. During the time she was in Colorado she received no evidences of the debt. When she returned to San Antonio, she called on appellant. After some delay, appellant delivered to her a note in the sum of five hundred dollars and a deed of trust on the two lots, both instruments being signed by C. A. Simpson. Appellant had placed the check in the bank to his credit and used the proceeds. The state's testimony was to the effect that Simpson did not have good title to the lots.

Appellant denied that he stated to Mrs. Biglay that the loan was to be made to a third party, stating that he said to Mrs. Biglay that the loan would be made on the Simpson lots. His testimony was to the effect that the transaction was bona fide. He said that he had frequently made loans for Mrs. Biglay. He declared that he had had the instruments executed at the time he received the five hundred dollars and had delivered them to Mrs. Biglay as soon as she returned from Colorado. He testified that the lots were worth the amount he had represented.

The state's testimony was to the effect that Mrs. Biglay had been a widow for 40 years. She had, during the time of her widowhood, done various kinds of work, including housework in families, cooking, ironing, etc. She had worked in hotels and cafes. She had saved the money appellant obtained from her. According to the state's testimony, appellant did not repay the money.

Appellant contends that the offense of theft by false pretext is not supported by the testimony, his position apparently being that the offense, if any is shown, is swindling. We are unable to agree with this contention. In Anderson v. State, 177 S. W., 85, the proof showed that Sims owned two hogs. Anderson proposed to buy them. Sims consented to sell them at seven dollars apiece, and at that price an agreement was made with Sims to sell and Anderson to buy the hogs. Anderson offered to pay Sims if he would deliver the hogs to the home of Anderson. Sims declined, but referred him to Kellum, and, in consideration of one dollar to be paid by Anderson, Kellum moved the hogs to Anderson's home. Anderson represented at the time of the purchase that he had the money at his home. Sims demanded cash and said he needed the money to pay a note and would not sell on credit. When the hogs reached Anderson's home, Sims demanded his money and Anderson refused to pay it. Upon these facts Anderson was held guilty of theft by false pretext. It is to be noted that Sims parted with possession of his hogs with intent to vest in Anderson the title thereof. However, such intent was based on Anderson's representation that he had the money at his home which would be delivered to Sims upon reaching Anderson's home.

In the present case, Mrs. Biglay delivered the check for five hundred dollars to appellant upon the representation by appellant that he would make a loan of the money to a party owning two lots, and secure from said party a note for five hundred dollars and a deed of trust on the lots to secure the payment of

the note. Appellant did not make the loan. On the contrary, he appropriated the money to his own use and benefit. After appropriating the money, he delivered Simpson's note and deed of trust to Mrs. Biglay.

In Rundell v. State, 235 S. W., 908, it is shown that the appellant represented that she had a secret connection with a certain oil driller from whom she would receive inside information about wells which were drilling, before they were completed, which information would enable her to double and treble the money turned over to her to be invested in such venture. Upon such representation, the appellant received from Dora Wilson a large sum of money. After the first transaction, the appellant represented to Miss Wilson that her investment had largely increased her funds, and upon such representation, acquired from Miss Wilson an additional sum of money, to be used with the other money above described, and, as an assurance to Miss Wilson against the loss of her money, the appellant executed a note in favor of Miss Wilson for the money received. The note was not paid and was never intended to be paid, so the jury found. The appellant absconded without making restitution of any of the money. Under the foregoing facts this court sustained a conviction for theft by false pretext.

Article 1413, Penal Code, relating to theft, reads as follows: "The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

Article 1549, Penal Code, reads as follows: "Where property, money, or other articles of value enumerated in the definition of swindling, are obtained in such manner as to come within the meaning of theft or some other offense the rules herein prescribed with regard to swindling shall not be understood to take any such case out of the operation of the law which defines any such other offense."

We quote from DeBlanc v. State, 37 S. W. (2d) 1024, as follows: "The facts in the case of Anderson v. State, supra, as well as the reason of the court in affirming the judgment, are illustrative of the point, which seems to have been overlooked in some of the decisions of this court, that, where the facts are such as would warrant a prosecution upon either swindling or

theft, the indictment should be for theft. The prosecution should be for swindling only in cases in which the facts would not sustain a conviction for theft, or a conviction under some other provision of the Penal Code penalizing the fraudulent acquisition of property. In the case under discussion, the following remarks are made: 'If, however, the facts in this case should be held to constitute swindling under article 1421, yet it can not be gainsaid that the facts would authorize a jury to find that the possession of the hogs was obtained by fraudulent pretext, with the intent to deprive the owner of their value, and with the intent to appropriate the property to his own use and benefit, and under such circumstances he would also be guilty of theft by fraudulent pretext.' "

The indictment charged that appellant obtained from Mrs. Biglay five hundred dollars in money, while the evidence showed that he received from Mrs. Biglay a check for the amount of five hundred dollars, which he deposited in the bank to his own credit, and which was thereafter paid. Appellant contends that there was a fatal variance between the allegations of the indictment and the proof with respect to the property obtained by him from the injured party. In Wimer v. State, 48 S. W. (2d) 296, the appellant was prosecuted for swindling. The proof showed that he received a check for $3,023.23 from the injured party, which he deposited in the Alamo National Bank to his credit, and which was thereafter paid by the City Central Bank and Trust Company. The indictment charged $3,023.23 in money was received from the injured party by the appellant. The conclusion was reached by this court that there was no variance. It was said that it appeared that the check was simply used as an instrument through which the money was received. In Wimer's case we quoted at length from the case of State v. Detloff, 201 Iowa, 159, 205 N. W., 534. In Detloff's case, it was held that a situation such as is under consideration here presented no fatal variance. We are unable to reach the conclusion that a different rule should be applied to a case of theft by false pretext. In both swindling and theft by false pretext the property is obtained by virtue of a false pretext or representation. From what we have said, it follows that we are of the opinion that there is no fatal variance between the allegations of the indictment and the proof with respect to the property obtained by appellant from the injured party. We disclaim any intention of holding that the rule here announced is applicable to cases of ordinary theft.

Appellant contends that the court in its charge permitted

a conviction on any kind of false pretext, and failed to restrict the consideration of the jury to specific false pretexts. There were no objections to the charge, and no special charge on the subject. Article 658, C. C. P., provides that before the charge is read to the jury the defendant or his counsel shall have a reasonable time to examine same and that he shall present his objections thereto in writing, distinctly specifying each ground of objection. Article 666, C. C. P., requires that all objections to the charge and to the refusal or modification of special charges shall be made at the time of the trial. We are unable to reach the conclusion that the charge presents fundamental error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON AFFIDAVIT TO DISMISS MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant has filed an affidavit requesting us to dismiss his motion for rehearing. Responding to the request, the motion for rehearing is dismissed.

*Dismissed.*