### F. R. SHERMAN v. THE STATE.

No. 15948.   Delivered June 21, 1933.
Reported in 62 S. W. (2d) 146.

The opinion states the case.

*W. K. McClain,* of Georgetown, for appellant.

*D. B. Wood, Crim.* Dist. Atty., and *Sam Burnap,* Asst. Crim. Dist. Atty., both of Georgetown, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft by false pretext; the punishment, confinement in the penitentiary for six years.

The testimony of Mary L. Shepherd, the injured party, was, in substance, as follows: On October 8, 1931, appellant came to her home and told her that he was an investment broker and represented Corporate Trust Shares, a very large financial institution, and that he was president of a brokerage concern in Fort Worth. Appellant stated to her that he had learned from her banker that she owned a note for $1,000, which she had been

unable to collect, and which apparently was without value. He advised her that, by reason of his connection, he could get her some money out of the note. Appellant then left her house, but later returned and exhibited a telegram which she did not read. However, appellant told her that he was advised in the telegram that the note she believed to be worthless could be sold for $383.00. He stated to her that she could receive the amount mentioned for the note if she would supplement such amount by giving him her check for $117, which sum together with the $383 received for the note, would be used by him in purchasing 100 shares of Corporate Trust stock for her in her name. Relying upon appellant's representations, she delivered to him a check for $117, payable to appellant, and the $1,000 note. Appellant cashed the check and converted the money to his own use and benefit. Before learning that appellant had converted the money to his own use and benefit, the witness delivered to appellant several thousand dollars in building and loan stock under an agreement whereby he was to sell the stock and invest the proceeds for her in Corporate Trust Shares. Appellant sold the stock and converted the proceeds to his own use and benefit. At no time did he invest the proceeds in Corporate Trust Shares. Altogether, appellant appropriated to his own use and benefit approximately $7,000 belonging to the witness.

It is unnecessary to set out appellant's defensive testimony. He declared that he had no intention at the time he received the check for $117 of appropriating the proceeds. He attempted to show his good faith in dealing with the property of the injured party.

The charge in the present case was predicated upon the theft of the check for $117 delivered by Miss Shepherd to appellant. We deem the testimony sufficient to show beyond a reasonable doubt that, at the time he induced Miss Shepherd to deliver the check to him, appellant entertained the fraudulent intent to appropriate the check to his own use and benefit. The state relied upon the character of theft defined in article 1413, P. C., wherein it is provided that, if the taking, though originally lawful, be obained by any false pretext, or with any intention to deprive the owner of the value thereof and to appropriate the property to the use and benefit of the taker, and it is so appropriated, the offense of theft is complete. Appellant contends that the offense is not theft; his position being that the proof on the part of the state shows that Miss Shepherd intended to part with the title to the check. In the cases relied upon by appellant, there are expressions to the effect that, if

the owner of the property parted, and intended to part, with the title as well as the possession, the offense would be swindling and not theft. See Elbury v. State, 25 S. W. (2d) 846; Gibson v. State, 214 S. W., 341; Segal v. State, 265 S. W., 911. In Contreras v. State, 39 S. W. (2d) 62, this court cited DeBlanc v. State, 37 S. W. (2d) 1024, and held that the intent of the owner in parting with the title was not the sole distinction between swindling and theft by false pretext. In DeBlanc's Case some of the cases now relied upon by appellant were reviewed, among them being Segal v. State, supra. The court said:

"In Segal's Case, 98 Texas Crim. Rep., 485, 265 S. W., 911, 35 A. L. R., 1331, it appeared that the accused purchased goods on credit. It was contended upon the trial that Segal, having at the time he bought the goods no intent to pay for them, characterized him as guilty of the offense of theft. This theory was rejected by the court upon the ground that the owner of the goods had the intention at the time of parting with both title to and possession of his goods." * * *

"Many of the cases cited and discussed in Segal's Case, supra, are illustrative of the fact that whether it was the intent of the owner to part with the possession only or possession and title is the basis of the distinction between the offense of theft and swindling. They, however, also illustrate the point that such intent is not the sole distinction. For example, the false pretext which results in the delivery of the property may embrace, not only the false representation of a past event, but a condition subsequent."

After reviewing the case of Anderson v. State, 77 Texas Crim. Rep., 31, the opinion of the court in DeBlanc's Case continues:

"The facts in the case of Anderson v. State, supra, as well as the reason of the court in affirming the judgment, are illustrative of the point, which seems to have been overlooked in some of the decisions of this court, that, where the facts are such as would warrant a prosecution upon either swindling or theft, the indictment should be for theft. The prosecution should be for swindling only in cases in which the facts would not sustain a conviction for theft, or a conviction under some other provision of the Penal Code penalizing the fraudulent acquisition of property. In the case under discussion, the following remarks are made: 'If, however, the facts in this case should be held to constitute swindling under article 1421, yet it cannot be gainsaid that the facts would authorize a jury to find that the possession of the hogs was obtained by fraudulent

pretext, with the intent to deprive the owner of their value, and with the intent to appropriate the property to his own use and benefit, and under such circumstances he would also be guilty of theft by fraudulent pretext.' Anderson v. State, 77 Texas Crim. Rep., 31, 177 S. W., 85, 88."

Article 1549, Penal Code, reads as follows: "Where property, money, or other articles of value enumerated in the definition of swindling, are obtained in such manner as to come within the meaning of theft or some other offense the rules herein prescribed with regard to swindling shall not be understood to take any such case out of the operation of the law which defines any such other offense."

In Contreras v. State, supra, the facts upon which the conviction rested were as follows: One Taylor had the general agency of certain life insurance companies; Contreras being Taylor's subagent. Contreras had written several policies in favor of Augustin Leal and three of his brothers. About a year after securing these policies, Augustin Leal desired to purchase a new truck, and Contreras represented to him that by making advance premium payments, he could borrow enough money on his insurance policies to purchase the truck. Relying upon the representation of Contreras, Leal paid him $66.00 as part of the five-year advance premium payment. Contreras did not have authority to collect the advance premium payments, and never, at any time, turned over to Taylor, the agent of the insurance companies, or to the companies, this $66.00, or any part of the $1,000.00 which he had collected altogether from Augustin Leal. The contention was made that the undisputed evidence showed that Leal intended to part, and did part, with both the title to and possession of the $66.00 in question, and that hence Contreras would be guilty of swindling and not theft. In overruling this contention, this court, speaking through Judge Hawkins, used language as follows:

"Appellant predicates alleged error in the refusal of his special instruction upon expressions found in many cases which he cites to the effect that, if the owner of the property parted, or intended to part, with the title as well as the possession, the offense would be swindling and not theft. Recently we had occasion to review this question in DeBlanc v. State (Texas Crim. App.), 37 S. W. (2d) 1024, decided April 8, 1931. It was there recognized that the distinction between swindling and theft mentioned above was generally accepted as correct, but that the intent of the owner in parting with his property was not the sole distinction. Where it is a question of whether

the offense is swindling or theft by conversion, the distinction mentioned unquestionably is controlling. See Anderson v. State, 77 Texas Crim. Rep., 31, 177 S. W., 85, 87; Rundell v. State, 90 Texas Crim. Rep., 410, 235 S. W., 908, and other cases cited in DeBlanc's Case, supra. It is plain from the facts of the present case that from the representations made by appellant to Leal he understood that appellant would transmit the money collected to his state agent in San Antonio, and that the policies would be credited with the advance premium payments, thereby rendering them available as collateral for a loan. The representations made by appellant were evidently intended to and did leave the impression upon Leal that appellant was authorized to deal with the policies in this manner. The representations having reference to future happenings would not support a prosecution for swindling. Martin v. State, 36 Texas Crim. Rep., 125, 35 S. W., 976, and other cases collated under section 2627, Branch's Ann. Tex. P. C., and in note 3, under Article 1545, Vernon's Ann. P. C. of Texas, vol. 3.

"The jury was fully warranted in also finding that at the very time appellant made the false representations he entertained the fraudulent purpose of converting the money which he hoped to obtain from Leal, that he did convert it, and that he obtained possession of it by a fraud practiced on Leal, but for which Leal would never have surrendered the money to appellant. We take this quotation from Anderson v. State, supra: 'But this case aptly illustrates a case where but for the fraudulent representation the title to the hogs would have passed, yet the appellant would not be guilty of swindling, because the fraudulent representation relied on was as to something thereafter to occur. And also aptly illustrates a case where a person obtains possession of property by fraudulent pretext, and under circumstances where the title would pass but for the fraud practiced, and is, in our opinion, the very character of case which article 1332 was intended to reach and punish."

The holding in Contrera's Case is controlling. See, also, White v. State, 58 S. W. (2d) 530; Rundell v. State, 235 S. W., 908. Giving it application, we are constrained to hold that the evidence supports the charge embraced in the indictment.

Bill of exception No. 3 reflects appellant's objection to the introduction in evidence by the state of a receipt showing that appellant had paid the rent on Post Office box No. 1826 in Fort Worth to December 31, 1932. The qualification to the bill of exception shows that many letters had been introduced in evi-

dence, written by appellant to Miss Shepherd, the injured party, showing the return address of appellant to be Post Office box. 1826, Fort Worth, Texas. Further, the qualification shows that appellant testified that he had rented the box in question in 1928, and had kept said Post Office box continuously. It is the general rule that the admission of improper evidence does not constitute reversible error if the same facts were proved by other evidence which was not objected to. 4 Tex. Jur., sec. 414, p. 587; Lawler v. State, 9 S. W. (2d) 259; Holder v. State, 18 S. W. (2d) 661; Anderson v. State, 8 S. W. (2d) 124.

It is shown in bills of exception 4, 5, 6, 7, 13 and 18 that the state was permitted to introduce in evidence, over appellant's objection, proof to the effect that, shortly after Miss Shepherd had delivered to appellant the check for $117, she was induced by appellant to deliver to him certificates of stock in certain building and loan associations, under an agreement whereby appellant was to sell the stock and invest the proceeds for Miss Shepherd in Corporate Trust Shares. Again, as reflected by these bills of exception, the state was permitted to show that appellant signed Miss Shepherd's name to the transfer certificates of the stock in question, and that he sold the stock and appropriated the proceeds of the sale to his own use and benefit. Each of the bills of exception in question deals with a particular phase of transactions between Miss Shepherd and appellant, in which it was shown by the state that appellant had sold all of Miss Shepherd's stock and appropriated the proceeds to his own use and benefit. The bills of exception are qualified to show that appellant testified that, at the time he acquired the check upon which the prosecution is predicated, he had no intent to appropriate it to his own use and benefit, but that he acted in good faith in the transaction. Moreover, appellant vigorously cross-examined Miss Shepherd in an effort to show by her that he had acted in good faith at the time he acquired the check in question. The transactions in question occurred prior to the time that Miss Shepherd learned that appellant had appropriated the check for $117. In each instance the state showed that appellant had acted in bad faith in dealing with the stock of Miss Shepherd, and had sold her stock and appropriated the proceeds without her consent; the total amount appropriated being approximately $7,000. The subsequent transactions appear to have been mere incidents in the carrying out of a fraudulent scheme on the part of appellant. See Stecker v. State of Wisconsin, 70 A. L. R., 203. It was material for the jury to determine whether appellant had the fraudulent intent

to appropriate the check for $117 at the time he persuaded Miss Shepherd to deliver it to him. The subsequent transactions, showing from the standpoint of the state that in dealing with Miss Shepherd appellant had fraudulently appropriated money he had obtained from her stock, bore on the issue of appellant's intent at the time he obtained the check. When an extraneous crime, or other transaction, tends to show intent when intent is an issue, proof of same is admissible. Branch's Annotated Penal Code, sec. 166; Fielder v. State, 49 S. W., 376; Rundell v. State, 235 S. W., 908; Alvarez v. State, 2 S. W. (2d) 849. The court limited the testimony to the question of intent.

Bills of exception 8 to 10, inclusive, relate to appellant's objection to the state proving by appellant while testifying as a witness for himself that he had been indicted in the federal court, and in the district court of Burnet county for swindling; and had paid fines in Tom Green county for swindling. Appellant's objection to this testimony was properly overruled. The offense of swindling involves moral turpitude. White v. State, 135 S. W., 562. When the accused testifies, he may be impeached, if the impeaching testimony is not too remote, by proving by him on cross-examination that he had been indicted or convicted, or that he was then under indictment, for felony or for a misdemeanor imputing moral turpitude. Branch's Annotated Penal Code, sec. 167; Lights v. State, 17 S. W., 428. While the bills of exception do not show that the indictments against appellant were for an offense of the grade of felony, yet in each case it was shown that the offense was swindling. Hence, even if the offense was misdemeanor swindling, in view of the fact that it involved moral turpitude, it was proper to impeach appellant by proving by him that he had been indicted for such an offense and had paid fines therefor. It is observed that the time fixed by the state was not remote, the last indictment being shown to be in 1928 or 1929.

Bills of exception 12, 14, 15, 16 and 17 are concerned with appellant's objection to the introduction in evidence of several letters written by appellant to Miss Shepherd. These letters related to the various transactions Miss Shepherd had with appellant relative to her stock, and were calculated to aid the jury in determining appellant's intent. In other words, from the state's standpoint, they shed light on appellant's fraudulent scheme. Our holding that proof of the extraneous transactions heretofore pointed out was admissible to show intent is applicable to these bills.

Bill of exception No. 11 reflects that the proof on the part of

the state showed that approximately six months after the date of the alleged theft, appellant had a conference with Miss Shepherd's attorney, and promised to procure and return the stock certificates Miss Shepherd had delivered to him. While the defendant was testifying, he was asked by the district attorney, in effect, how he expected to return the property when he promised to return it. In the same connection, the district attorney asked appellant what money or property he had at the time he made the promise. Appellant objected to the question, and the objection was overruled. Appellant finally admitted that he did not have any money or property at the time he made the promise. We think this testimony was admissible as showing that appellant had converted Miss Shepherd's stock and spent the money he had promised to invest for her in Corporate Trust Shares.

There were no objections to the court's main charge. As shown in bill of exception No. 1, appellant presented to the court a requested instruction in which the jury would have been advised that the testimony touching the subsequent transactions involving the delivery of the various certificates of stock by Miss Shepherd to appellant and the embezzlement of the proceeds derived from the sale of such stock by appellant was withdrawn from their consideration. Our holding that this testimony was admissible on the question of intent militates against the conclusion that the testimony should have been withdrawn from the jury.

Bill of exception No. 2 shows that the district attorney, in argument, stated to the jury that appellant had taken money from Miss Shepherd and was supporting a woman with whom he was living in Dallas. It appears that the court sustained appellant's objection to the argument and instructed the jury to disregard it. It appears from the bill of exception that the district attorney then replied: "A hit dog howls." The qualification to the bill of exception shows that it was in evidence, without objection, that appellant had lived in an apartment house in Dallas with a woman to whom he was not married, and that appellant had admitted that he had spent a part of the money, if not all of it, on the apartment in which he and this woman were living. Again, the qualification states that appellant testified, without objection from anyone, as follows: "Yes that is the lady that I was living with at that time; her name was Curon. The little boy that was there with her was not my little boy." The qualification concludes as follows: "The argument to which objection was made came in the district attorney's closing argu-

ment and was a legitimate comment upon evidence introduced in the trial, some by defendant and some by the state, to which there were no objections, and such argument complained of was not prejudicial, nor without support in the evidence, and the latter part of the argument complained of in this bill came after counsel for the defendant had on a number of occasions interfered by making objections to statements being made by the district attorney."

Manifestly, as qualified, the bill of exception fails to reflect error.

A careful examination of all of appellant's contentions leads up to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.