NO. 07-00-0107-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 10, 2000



______________________________




WILLIAM CASH LOVE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_________________________________



FROM THE 64th DISTRICT COURT OF SWISHER COUNTY;



NO. B3251-9907CR; HONORABLE JACK MILLER, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

ON MOTION TO SUSPEND OPERATION OF TEX. R. APP. P. 21.8


 Appellant William Cash Love applies by motion for this court to suspend operation
of Texas Rule of Appellate Procedure 21.8 (1) and to thereby extend the time for the trial
court to rule on his Amended Motion for New Trial before it is overruled by operation of
law. We deny the motion.

FACTUAL AND PROCEDURAL BACKGROUND

 Appellant alleges by a motion filed with the clerk of this court on April 13, 2000, that
sentence was imposed in this matter on January 29, 2000. He further alleges that notice
of appeal was timely filed, motion for new trial and amended motion for new trial were
timely filed, and that hearing was held on the amended motion for new trial on April 12,
2000. In his motion, appellant alleges that attorneys for the State and appellant agreed
to a schedule for presenting a transcript of the hearing on the motion for new trial and
briefs respecting positions of the parties to the trial court, and that the trial court accepted
the agreement in lieu of making a ruling on appellant's motion for new trial at the time of
the hearing on April 12, 2000. The agreed schedule provided for the trial court to rule on
appellant's amended motion for new trial sometime after May 15, 2000. 

 Rule 21.8(a) and (c) result in appellant's amended motion for new trial having been
overruled by operation of law upon the expiration of 75 days following January 29, 2000,
when sentence was imposed, unless the trial court ruled on the motion within such 75-day
period. The 75-day period expired on April 13, 2000. 



LAW

 In Oldham v. State, 977 S.W.2d 354 (Tex.Crim.App. 1998), the Court of Criminal
Appeals considered a cause in which the court of appeals suspended the provisions of
then Rule 31(a)(1) which required a motion for new trial to be filed within 30 days after
sentencing of the defendant. The suspension was under provisions of Rule 2(b), which
was the predecessor rule to current Rule 2. The suspension was based on "good cause"
in that appellant Oldham had allegedly been deprived of counsel in violation of her
constitutional rights, and had not filed a motion for new trial in regard to her forgery
conviction. The court of appeals abated and remanded the case so that appellant could
file a motion for new trial to assert the constitutional violation. Oldham v. State, 977
S.W.2d at 355-57. The Court of Criminal Appeals, in reversing the decision of the court
of appeals, stated that 

 In essence, the Court of Appeals used Rule 2(b) to extend the time limit for
the filing of the appellant's motion for a new trial some two years and eight
months, this being the time from the appellant's sentencing to the date of the
Court of Appeals' decision. . . . We believe the Court of Appeals was in error
to rely on Rule 2(b) as a mechanism to extend the time limits for the filing of
a motion for a new trial imposed by Rule 31(a)(1). . . . Rule 2(b) is in
essence an escape valve to be used by an appellate court when a case
becomes unduly stalled or delayed in the appellate process due to
procedural rules, and the interests of justice compel speeding up the
process; although Rule 2(b) may be used to shorten the time limits when
justice so requires, it should not be used as a method to lengthen procedural
time limits absent truly extraordinary circumstances, even in an effort to
protect the substantive rights of litigants. Oldham v. State, 977 S.W.2d at
356, 360.


 In State v. Riewe, No. 699-99 (Tex.Crim.App. Mar. 8, 2000), the court reiterated its
statements in Oldham to the effect that Rule 2 is not to be used to enlarge timeframes
established by the appellate rules for appeals: "[Rule 2] was not intended to be used to
lengthen procedural time limits, even in an effort to protect the substantive rights of
litigants."

ANALYSIS

 Granting appellant's motion would expand the time limits established by the TRAP
for appellant's appeals process. As Rule 2 has been interpreted in Oldham and Riewe,
we cannot suspend the operation of Rule 21.8 and extend the time for the trial court to rule
on appellant's amended motion for new trial under the circumstances presented by
appellant. Thus, assuming appellant, the State, and the trial judge agreed on the proposal
as described in appellant's motion, we still must, and therefore do, deny appellant's
motion. 

 Per Curiam


Do not publish.

1. Further references to the rules of appellate procedure will be by reference to "Rule"
or "TRAP."


.04(a) (Vernon Supp. 2003). Fleeing a police officer, though improper,
does not necessarily involve moral depravity or dishonesty, as do crimes like theft,
swindling, making a false report, or assault upon a woman by a man (which crimes have
been held as involving moral turpitude). See e.g. Bensaw v. State, 129 Tex. Crim. 474,
88 S.W.2d 495 (1935) (involving theft); Sherman v. State, 124 Tex. Crim. 273, 62 S.W.2d
146, 150 (1933) (involving swindling); Lape v. State, 893 S.W.2d 949, 958 (Tex. Civ.
App.--Houston [14th Dist.] 1994, pet. ref'd) (involving a false report); Hardeman v. State,
868 S.W.2d 404, 407 (Tex. App.--Austin 1993, pet. dism'd) (involving assault by a man
upon a woman). Nor do we view it as striking at the moral sentiment of the community. 
It is wrong, but it does not evince a morally bad person having a defective character. Thus,
the crime is not one of moral turpitude, and the trial court did not abuse its discretion in
refusing to allow appellant to use the conviction to impeach the witness. 

Issue Four - Factual Sufficiency of the Evidence 


 In his final issue, appellant contends the evidence is factually insufficient to support
the verdict. We overrule the issue.

 The standard by which we review factual sufficiency challenges is well established
and we need not reiterate it. Instead, we cite the parties to Zuliani v. State, No. 1168-01,
2003 Tex. Crim. App. Lexis 26 (Tex. Crim. App. February 5, 2003) and King v. State, 29
S.W.3d 556, 562-63 (Tex. Crim. App. 2000) for its explanation. 

 Next, appellant was found guilty of aggravated assault by intentionally, knowingly,
or recklessly causing bodily injury to Ruben Valdez by striking Valdez with a board that was
a deadly weapon in that the manner of use and intended use was capable of causing death
or serious bodily injury. See Tex. Pen. Code Ann. §22.02(a) (Vernon 1994). 

 Next, the record contains the following evidence. Appellant had been hired by
Valdez, who worked for Larry Denson, the owner of a roofing company, to tear off old roof
shingles. While appellant was working, part of the roof caved in because too many
shingles had been piled on top of it. Denson had also received a complaint that the roofers
were drinking on the job. Thus, Valdez was told to fire appellant, which he did. Thereafter,
appellant left a message on Denson's phone not only identifying himself but also stating
that he was "going to get" Valdez. 

 Later, a young man came to the door of Valdez' home and asked if he could get
help with his car, which car contained appellant and another individual. Upon approaching
the car, Valdez was hit by a board wielded by one of the men. Valdez was then able to get
to his vehicle and retrieve a pry bar from it. One of the men then ran away after dropping
the board. At that point, Valdez retrieved the board and advanced upon the other man. 
Appellant then exited the car and stated he was going to kill Valdez. Although Valdez was
able to initially hit appellant with the board, the other man intervened and Valdez himself
was ultimately beaten by the assailants with the board. Valdez received a laceration on
his scalp that required nine staples and sustained multiple broken fingers as well as 
bruises. Valdez subsequently identified appellant as one of the assailants, though he
initially referred to appellant as Freddy Martinez (rather than Dominguez). This evidence
permits a rational jury to conclude, beyond reasonable doubt, that appellant was either the
primary assailant or a party to the assault as alleged in the indictment. (1) 

 While questions arose as to whether the board admitted as an exhibit at trial was
the one used to strike Valdez, as to Valdez' mischaracterization of appellant's last name,
and as to appellant's claim of self-defense, the evidence was nonetheless sufficient to
warrant conviction. (2) It was for the jury to credit those witnesses and that evidence which
it chose to credit. Furthermore, the testimony of Valdez was not inherently unbelievable
or that of appellant indisputable. The jury could have believed either and their respective
versions of what occurred. 

 In short, the evidence of guilt is not so weak as to render the verdict clearly wrong
or manifestly unjust. Nor is the finding of guilt so contrary to the great weight and
preponderance of the evidence as to be clearly wrong. So, the evidence is factually
sufficient to support the verdict.

 The judgment of the trial court is affirmed. 


 Brian Quinn

 Justice

 

 


Do not publish.



 




1. At trial, the court included a party charge in its instructions to the jury.
2. Appellant testified at trial that he went to Valdez' home alone, knocked on the front door, and was
beaten by Valdez with a board. He asserted that any injuries received by Valdez were the result of the need
to defend himself against Valdez.