NO. 07-02-0264-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



 MARCH 4, 2003


______________________________



FREDDY DOMINGUEZ
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 364 DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-437,238; HON. CECIL PURYEAR, PRESIDING


_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

 Appellant Freddy Dominguez appeals his conviction for aggravated assault with a
deadly weapon. Through four issues, he claims that 1) the evidence was insufficient "to
support the jury verdict of 'true' to the enhancement count when the Indictment alleged the
date of the conviction as April 5th, 1994 when the actual date of revocation was April 4th,
1994," 2) the trial court "abused its discretion when it denied [his] Motion to Testify Free
from Impeachment by a prior conviction," 3) the trial court erred in determining that evading
arrest was not a crime of moral turpitude, and 4) the evidence was factually insufficient to
support the conviction. We affirm the judgment of the trial court. 


Issue One -- Variance Between Date of Final Conviction 


as Alleged in Indictment and Proved at Trial



 The first issue concerns the State's attempt to enhance appellant's punishment
through proof of a prior conviction. The State alleged in the indictment that the conviction
became final on April 5, 1994, while the evidence illustrated that it actually became final
a day earlier. And, because of this variance between the allegation and ensuing proof, no
evidence purportedly illustrated that appellant was finally convicted as alleged in the
indictment. We overrule the issue.

 Variances such as that in question are not fatal unless it misleads the appellant to
his prejudice. Freda v. State, 704 S.W.2d 41, 42-43 (Tex. Crim. App. 1986); Thompson
v. State, 563 S.W.2d 247, 251 (Tex. Crim. App. 1978). Here, appellant neither contends
nor illustrates that he was misled to his prejudice in any way by the variance. Thus, it was,
and is, not fatal.

Issue Two - Denial of Motion to Testify Free From Impeachment


 Via his second issue, appellant complains the trial court erred in rebuffing his
attempt, via pretrial motion, to prevent the State from asking him about a prior felony theft
conviction. Furthermore, his effort was based upon Texas Rule of Evidence 403, i.e. the
probative value of the evidence was substantially outweighed by its prejudicial effect. We
overrule the issue for several reasons.

 First, the sum and substance of appellant's argument consists of no more than
quoting passages from the record and generally mentioning a case that described indicia
which may be considered in assessing issues implicating Rule 403. He provides us with
no explanation as to how those indicia should be applied at bar. Nor does he attempt to
explain why the court's decision was error. Instead, he merely "urges this Court to find that
the trial court abused its discretion . . . ." That does not constitute adequate briefing, as
required by Texas Rule of Appellate Procedure 38.1(h). Billy v. State, 77 S.W.3d 427, 429
(Tex. App.--Dallas 2002, pet. ref'd) (holding that the appellant must not only cite to the
record and pertinent legal authority but also include substantive analysis within his
argument). 

 Second, at the time the motion was argued, appellant informed the court that he
"would stipulate that it would be agreeable to say that he has a prior felony conviction, but
[he] just [does not] see a theft conviction getting in front of the jury, [in] an aggravated
assault with a deadly weapon case . . . ." In other words, he had no problem with the
State simply mentioning that he had been previously convicted of a prior felony. His
concern involved allusion to the particular offense, i.e. theft. Moreover, in questioning
appellant, the State asked whether he was previously convicted of a felony resulting in his
incarceration; it did not mention or ask about the particular offense underlying the felony. 
Thus, it did no more than what appellant, at trial, agreed it could do. At the very least, the
objection at trial fails to comport with the complaint now urged on appeal which results in
the waiver of the complaint. Livar v. State, 929 S.W.2d 573, 576 (Tex. App.--Fort Worth
1996, pet. ref'd).

Issue Three - Evading Arrest a Crime of Moral Turpitude


 In his third issue, appellant complains of the trial court's refusal to permit him to
impeach a witness via allusion to the witness's prior conviction for evading arrest. He
believed himself entitled to so impeach the witness because evading arrest purportedly
constitutes a crime of moral turpitude, and one can impeach a witness, under Texas Rule
of Evidence 609, by illustrating that he has been convicted of a crime of moral turpitude. 
Finding it somewhat ironic that appellant now wants to do that which he previously argued
should not be done (i.e. impeach one through reference to a prior conviction for a particular
crime), we nonetheless overrule the issue. 

 A crime of moral turpitude is one involving 1) grave infringement of the moral
sentiment of the community, 2) conduct that is base, vile, or depraved, and 3) something
inherently immoral and dishonest. Arnold v. State, 36 S.W.3d 542, 546 (Tex. App.--Tyler
2000, pet. ref'd). Appellant cites no Texas cases, and we have found none, holding that
evading arrest is a crime of moral turpitude. 

 Furthermore, a person commits the offense of evading arrest if he intentionally flees
from a person he knows is a peace officer attempting to lawfully arrest or detain him. Tex.
Pen. Code Ann. §38.04(a) (Vernon Supp. 2003). Fleeing a police officer, though improper,
does not necessarily involve moral depravity or dishonesty, as do crimes like theft,
swindling, making a false report, or assault upon a woman by a man (which crimes have
been held as involving moral turpitude). See e.g. Bensaw v. State, 129 Tex. Crim. 474,
88 S.W.2d 495 (1935) (involving theft); Sherman v. State, 124 Tex. Crim. 273, 62 S.W.2d
146, 150 (1933) (involving swindling); Lape v. State, 893 S.W.2d 949, 958 (Tex. Civ.
App.--Houston [14th Dist.] 1994, pet. ref'd) (involving a false report); Hardeman v. State,
868 S.W.2d 404, 407 (Tex. App.--Austin 1993, pet. dism'd) (involving assault by a man
upon a woman). Nor do we view it as striking at the moral sentiment of the community. 
It is wrong, but it does not evince a morally bad person having a defective character. Thus,
the crime is not one of moral turpitude, and the trial court did not abuse its discretion in
refusing to allow appellant to use the conviction to impeach the witness. 

Issue Four - Factual Sufficiency of the Evidence 


 In his final issue, appellant contends the evidence is factually insufficient to support
the verdict. We overrule the issue.

 The standard by which we review factual sufficiency challenges is well established
and we need not reiterate it. Instead, we cite the parties to Zuliani v. State, No. 1168-01,
2003 Tex. Crim. App. Lexis 26 (Tex. Crim. App. February 5, 2003) and King v. State, 29
S.W.3d 556, 562-63 (Tex. Crim. App. 2000) for its explanation. 

 Next, appellant was found guilty of aggravated assault by intentionally, knowingly,
or recklessly causing bodily injury to Ruben Valdez by striking Valdez with a board that was
a deadly weapon in that the manner of use and intended use was capable of causing death
or serious bodily injury. See Tex. Pen. Code Ann. §22.02(a) (Vernon 1994). 

 Next, the record contains the following evidence. Appellant had been hired by
Valdez, who worked for Larry Denson, the owner of a roofing company, to tear off old roof
shingles. While appellant was working, part of the roof caved in because too many
shingles had been piled on top of it. Denson had also received a complaint that the roofers
were drinking on the job. Thus, Valdez was told to fire appellant, which he did. Thereafter,
appellant left a message on Denson's phone not only identifying himself but also stating
that he was "going to get" Valdez. 

 Later, a young man came to the door of Valdez' home and asked if he could get
help with his car, which car contained appellant and another individual. Upon approaching
the car, Valdez was hit by a board wielded by one of the men. Valdez was then able to get
to his vehicle and retrieve a pry bar from it. One of the men then ran away after dropping
the board. At that point, Valdez retrieved the board and advanced upon the other man. 
Appellant then exited the car and stated he was going to kill Valdez. Although Valdez was
able to initially hit appellant with the board, the other man intervened and Valdez himself
was ultimately beaten by the assailants with the board. Valdez received a laceration on
his scalp that required nine staples and sustained multiple broken fingers as well as 
bruises. Valdez subsequently identified appellant as one of the assailants, though he
initially referred to appellant as Freddy Martinez (rather than Dominguez). This evidence
permits a rational jury to conclude, beyond reasonable doubt, that appellant was either the
primary assailant or a party to the assault as alleged in the indictment. (1) 

 While questions arose as to whether the board admitted as an exhibit at trial was
the one used to strike Valdez, as to Valdez' mischaracterization of appellant's last name,
and as to appellant's claim of self-defense, the evidence was nonetheless sufficient to
warrant conviction. (2) It was for the jury to credit those witnesses and that evidence which
it chose to credit. Furthermore, the testimony of Valdez was not inherently unbelievable
or that of appellant indisputable. The jury could have believed either and their respective
versions of what occurred. 

 In short, the evidence of guilt is not so weak as to render the verdict clearly wrong
or manifestly unjust. Nor is the finding of guilt so contrary to the great weight and
preponderance of the evidence as to be clearly wrong. So, the evidence is factually
sufficient to support the verdict.

 The judgment of the trial court is affirmed. 


 Brian Quinn

 Justice

 

 


Do not publish.



 




1. At trial, the court included a party charge in its instructions to the jury.
2. Appellant testified at trial that he went to Valdez' home alone, knocked on the front door, and was
beaten by Valdez with a board. He asserted that any injuries received by Valdez were the result of the need
to defend himself against Valdez. 


      Our review of a summary judgment is de novo to determine whether a party’s right
to prevail is established as a matter of law. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900
S.W.2d 339, 341 (Tex. 1995). We take as true all evidence favorable to the non-movant,
and indulge every reasonable inference and resolve any doubt in the non-movant’s favor.
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). For a 
movant to prevail on a traditional motion for summary judgment, he must conclusively
establish the absence of any genuine question of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c). Where the movant is a defendant, 
he must negate at least one essential element of the plaintiff's cause of action. Likewise,
a defendant who conclusively establishes each element of an affirmative defense is entitled
to summary judgment. Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.
1995). 
          Once the movant has established a right to summary judgment, the non-movant has
the burden to respond to the motion for summary judgment and present any issues which
would preclude summary judgment. City of Houston v. Clear Creek Basin Authority, 589
S.W.2d 671, 678 (Tex. 1979). Issues not expressly presented to the trial court in writing
shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c). All
theories in support of, or in opposition to, a motion for summary judgment must be
presented in writing to the trial court. Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). 
          A motion for summary judgment must expressly present the grounds on which it is
made and must stand or fall on these grounds alone. Science Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 912 (Tex. 1997). When, as here, a trial court's order granting summary
judgment does not specify the grounds relied upon, the reviewing court must affirm
summary judgment if any of the summary judgment grounds are meritorious. FM Properties
Operating Co. v. City of Austin, 22 S.W.3d 868, 872-73 (Tex. 2000); Star-Telegram, Inc. v.
Doe, 915 S.W.2d 471, 473 (Tex. 1995). 
 
 
 
Affirmative Defense of Limitations
          We begin with the Popes’ fourth issue, in which they assert the trial court erred if it
based summary judgment on the bar of limitations. We disagree, and find the issue
dispositive of the appeal.
          A defendant moving for summary judgment on the affirmative defense of limitations
has the burden to (1) conclusively prove when the cause of action accrued and (2) negate
the discovery rule, if it applies and has been pleaded or otherwise raised.


 Diversicare Gen.
Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005); Graham v. Pirkey, 212 S.W.3d
507, 510-11 (Tex.App.–Austin 2006, no pet.). If a movant establishes that the statute of
limitations bars an action, the non-movant must then adduce summary judgment proof
raising a fact issue in avoidance of limitations. Graham, 212 S.W.3d at 510-11.  
          The Popes’ claims against Kiella for nuisance, trespass and violation of Water Code
§ 11.086 all have a limitations period of two years. See Tex. Civ. Prac. & Rem. Code Ann.
§ 16.003 (Vernon 2005) (person must bring suit for, inter alia, “trespass for injury to the
estate or to the property of another” not later than two years after the day the cause of
action accrues); Schneider Nat’l Carriers, Inc. v. Bates, 147 S.W.3d 264 (Tex. 2004)
(“limitations period for a private nuisance claim is two years”); Anders v. Mallard & Mallard,
Inc., 817 S.W.2d 90, 95 (Tex.App.–Houston [14th Dist.] 1991, no writ) (two-year statute of
limitations applies to claims brought under § 11.086 of Texas Water Code). 
          The question is when the Popes’ causes of action accrued. Accrual of limitations is
a question of law. Schneider Nat’l, 147 S.W.3d at 274-75. We begin with the Popes’
nuisance claim. A nuisance has been defined as a condition that substantially interferes
with the use and enjoyment of land by causing unreasonable discomfort or annoyance to
persons of ordinary sensibilities. Id. at 269. The accrual of a nuisance claim depends on
whether the nuisance alleged is "permanent" or "temporary." A permanent nuisance claim
accrues when injury first occurs or is discovered; a temporary nuisance claim accrues anew
upon each injury. Id.
          As our Supreme Court noted in its recent Schneider National opinion, the date of
accrual of a nuisance cause of action for limitations purposes is one of three consequences
that result from the categorization of a nuisance as permanent or temporary.


 Schneider
Nat’l, 147 S.W.3d at 275. Discussing categorization in the context of accrual of the nuisance
cause of action, the court there began with the general rule that a cause of action accrues
and limitations begins to run when facts exist that authorize a claimant to seek judicial relief. 
Id. at 279. Continuing, the court said:
As nuisance claims arise only upon a substantial interference with property
use, they normally do not accrue when a potential source is under
construction; instead, a landowner “has the right to wait and see what the
result will be when the improvements are subjected to an actual test.” But
once operations begin and interference occurs, limitations runs against a
nuisance claim just as against any other. Id. (emphasis in original; internal
citations omitted)
 
          We find the Supreme Court’s rationale and language directly applicable here. The
factual allegations in the Popes’ petition begin with Kiella’s 1996 application for approval to
build Briarcrest. The petition then asserts: “Plaintiffs and others in their neighborhood were
concerned that the prospect of a new subdivision would affect the amount of runoff water
that would move directly from the proposed subdivision on to their property. Plaintiffs
formally objected to the project but [Kiella] was permitted to go forward with construction.” 
          The “actual test,” Schneider Nat’l, 147 S.W.3d at 279, came in 2001. The flooding,
which was the very interference with their enjoyment of their own property the Popes feared,
occurred. The summary judgment record makes clear the Popes regarded the 2001
flooding as proof their objections to the construction of Briarcrest were well founded.
Responding to an interrogatory, the Popes stated a member of the Temple City Council and
two City engineers came to their home late on the day of the 2001 flooding, after they called
the City. During that visit, the Popes “reminded them of the formal protest of the
development and that our neighborhood had concerns that when more water was added
to the streets in our area we would have problems.” 
          The instant suit involves more than the physical damages to the Popes’ residence
caused by the floodwaters. To another interrogatory asking about their claimed damages,
the Popes responded that damages to be considered by the jury included diminution in the
market value of the house and “future damages if flooding should occur again.” 
          The Popes point to the court’s statement in Schneider National that the occurrence
of a nuisance “several times in the years leading up to a trial” is likely to give jurors enough
evidence of the nuisance’s frequency and duration to evaluate its impact on property values,
leading to the conclusion the nuisance should be treated as permanent.


 Schneider Nat’l,
147 S.W.3d at 280. They argue the occurrence of flooding only twice, in 2001 and 2003,
from a subdivision completed in 1997, does not meet that standard.
          We disagree. The record demonstrates that the nuisance for which the Popes have
sued is a recurrent one. The source they blame for their injuries, the Briarcrest subdivision,
is permanent.


 Addressing the question whether characterization of a nuisance as
permanent or temporary should focus on the defendant’s operations or the plaintiff’s injury,
the court held that “a permanent nuisance may be established by showing that either the
plaintiff’s injuries or the defendant’s operations are permanent.” Id. at 283. That recurrence
of the injury is dependent on a sufficiently heavy rain does not make the nuisance
temporary. Id. at 283; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57, 61-62 (1931). 
Nor are the two flood injuries documented in the summary judgment record “so irregular or
intermittent” that “future injury cannot be estimated with reasonable certainty.” Schneider
Nat’l, 147 S.W.3d at 281. We find the Popes allege a permanent nuisance caused by the
Briarcrest subdivision, and that facts existed on the occurrence of the 2001 flooding that
authorized them to seek judicial relief against Kiella for the nuisance they assert. The
nuisance cause of action then accrued, and became barred by limitations two years later. 
The court did not err by granting summary judgment on the Popes’ nuisance claim.
          The parties agree that the timeliness of filing of the Popes’ trespass claim also
depends on whether they assert permanent or temporary damage to their property. See,
e.g., Waddy v. City of Houston, 834 S.W.2d 97, 102 (Tex.App.–Houston [1st Dist. 1992, writ
denied) (action for trespass by permanent damage to land accrued, for limitations purposes,
on discovery of first actionable injury). See also Tex. Civ. Prac. & Rem. Code Ann. §
16.003 (Vernon 2005). Our determination that the Popes’ nuisance claim involved
permanent damage to their property, requires the same conclusion with respect to their
trespass claim. We find it also accrued on the occurrence of the 2001 flooding, and was
properly subject to Kiella’s affirmative defense of limitations.
          As noted, courts also have applied a two-year statute of limitations to claims for
damages under § 11.086 of the Texas Water Code. Graham, 212 S.W.3d at 512; Anders,
817 S.W.2d at 95. No contention is made that the claim for damages under that statute
asserted in this case accrued at any later date than the nuisance or trespass claims. 
Accordingly, we find the trial court did not err by granting summary judgment as to that claim
as well.
          We overrule the Popes’ fourth issue. Because we find Kiella conclusively established 
entitlement to judgment based on the affirmative defense of limitations, we need not
address the Popes’ other issues. Tex. R. App. P. 47.1. Accordingly, we affirm the trial
court’s take-nothing judgment.
 
                                                                           James T. Campbell

                                                                                     Justice